[No. S035821. Dec. 19, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JESSIE RAYFORD, Defendant and Appellant.

4

## COUNSEL

Terrence Verson Scott, under appointment by the Supreme Court, and Andrew E. Rubin for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Pat Zaharopoulos, Sara Gros-Cloren and Keith I. Motley, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**ARABIAN, J.**—Our task is to determine whether a statute that proscribes kidnapping with the intent to commit rape, oral copulation, sodomy, or rape by instrument (Pen. Code, § 208, subd. (d)), is an offense separate from, or an enhancement to, simple kidnapping (Pen. Code, § 207, subd. (a)), and to delineate the circumstances under which evidence of asportation is sufficient to support a kidnapping conviction under Penal Code section 208, subdivision (d). We conclude that section 208, subdivision (d) is a separate crime, and that the evidence of asportation was sufficient to support the verdict in this case. Hence, we reverse the judgment of the Court of Appeal.

### I. FACTS AND PROCEDURAL BACKGROUND

At approximately 10:30 on the evening of April 24, 1991, the victim, Elizabeth R., was walking home from a bus stop when she was accosted by

defendant as she entered the parking lot of a closed store. He told her to stop and that he had a gun. Elizabeth started crying, and asked defendant not to hurt her. Defendant took Elizabeth by the arm, and told her to walk with him. He said that he would not hurt her if she did what he said.

Defendant led Elizabeth beyond a block wall at the end of the parking lot. The wall ran perpendicular to the two-lane street. Bushes were located at the end of the wall. Defendant took Elizabeth to a slender tree behind the wall, located approximately 34 feet from the street. The ground behind the wall was undeveloped, and made up of dirt and rocks.

Defendant repeatedly told Elizabeth to get on the ground by the tree. She finally did so, sitting with her back to the wall. Defendant then told her to remove her clothes. She removed her pants and underwear. Defendant removed his pants. Elizabeth dissuaded defendant from raping her by pointing out that she was bleeding, and they got dressed. Defendant asked if she had any money, and she gave him $10 and her wallet. He returned her wallet and told her to stay where she was for 15 minutes and not to get up until he was gone. The incident lasted 15 to 20 minutes. Subsequent measurements showed she was moved a distance of approximately 105 feet.

Elizabeth positively identified defendant. Defendant did not testify or present any witnesses. The jury was instructed in relevant part:

"The defendant is accused in the special allegation to Count 1 . . . of having committed the crime of kidnapping with intent to commit rape, a violation of section 208D of the Penal Code. Every person who with specific intent to commit rape kidnaps any individual is guilty of the crime of kidnapping to commit rape . . . .

"Kidnapping is the unlawful movement by physical force or by any other means of instilling fear, of a person . . . for a substantial distance, where such movement is not merely incidental to the commission of the rape, and where such movement substantially increases the risk of significant physical injuries to such person over and above those to which such person is normally exposed in the commission of the crime of rape itself.

"In order to prove such allegation, each of the following elements must be proved: . . . 4[.] The movement of such person was for a substantial distance that's a distance more than slight or trivial; and 5[.] Such movement substantially increased the risk of significant physical injuries to such person over and above those to which such person normally would have been exposed in the commission of the crime of rape itself."

The jury found defendant guilty of simple kidnapping (Pen. Code,[1] § 207, subd. (a)), and found true the allegation that he had kidnapped the victim with the intent to commit rape pursuant to section 208, subdivision (d) (hereafter section 208(d)). The jury also convicted defendant of assault with intent to commit rape (§ 220), and second degree robbery (§ 211). He was found not guilty of the kidnapping for robbery charge. Defendant waived his right to a jury trial on the prior serious felony conviction of rape in concert and the court found the allegation true. He was sentenced to 17 years in state prison.

The Court of Appeal first tentatively concluded that section 208(d), kidnapping with the intent to commit rape, is an enhancement to the crime of section 207, subdivision (a) simple kidnapping, not a separate crime. The court further concluded, however, that defendant waived his right to challenge the form of the pleading by failing to file a demurrer.

Relying in part on a then recent Court of Appeal decision, *People* v. *Bradley* (1993) 15 Cal.App.4th 1144 [19 Cal.Rptr.2d 276], the court next concluded that the asportation test for section 208(d) kidnapping was that applied to section 207 simple kidnapping, not the standard used for section 209, subdivision (b) aggravated kidnapping that the trial court had used. Applying that test, the court concluded that the 105-foot distance alone was insufficient to constitute movement " 'into another part of the same county.' " Again relying in part on *People* v. *Bradley, supra,* 15 Cal.App.4th 1144, the court stated, "Adding a consideration of the boundaries crossed does not convert the movement in this case from a slight movement to a substantial one. . . . [T]he victim here was not moved into an enclosed area out of public view. . . . [She] was taken to a place which was equally visible from the street and equally visible to people on the victim's side of the block wall. The wall only blocked the view from the parking lot side. Although the area the victim was taken to was darker than the parking lot in which she was accosted, we are not prepared to say that darkness constitutes a significant boundary . . . . [¶] We therefore find the evidence insufficient to demonstrate asportation, an essential element of the offense." The Court of Appeal reversed the kidnapping conviction, and remanded for resentencing.

We granted the Attorney General's petition for review.

---

[1]All statutory references contained herein are to the California Penal Code unless otherwise indicated.

## II. Discussion

### A. *Is Section 208(d) a Separate Offense or an Enhancement?*

■ At the outset, we consider whether section 208(d)[2] is a crime separate from, or an enhancement to, the crime of section 207, subdivision (a) (hereafter section 207(a)),[3] kidnapping. If section 208(d) is an enhancement to section 207(a), it necessarily incorporates the asportation test articulated for section 207(a) simple kidnapping. If section 208(d) is a separate crime, however, we must then determine whether the asportation standard is derived from section 207 simple kidnapping or section 209 aggravated kidnapping.

Both parties assert that section 208(d) is a separate offense. We agree.

First, we observe that the Legislature, in the recently enacted section 667.61 (part of what is commonly known as the "One Strike" law), which creates a new enhancement, characterized section 208(d) as a separate crime. In particular, one of the operative circumstances that gives rise to the application of the enhancement is that "the defendant kidnapped the victim of the present [sexual] offense in violation of Section 207, *208*, 209, or 209.5" (§ 667.61, subd. (e)(1), italics added.) In addition, the "One Strike" law also amends section 1203.066, subdivision (a)(6) to limit the trial court's sentencing options for "A person who violated Section 288 or 288.5 while kidnapping the child victim in violation of Section 207, *208*, or 209." (Italics added.) Significantly, section 1203.066, subdivision (a)(6), formerly read, "A person convicted of kidnapping the child victim in violation of either Section 207 or 209 and who kidnapped the victim for the purpose of committing a violation of Section 288 or 288.5."

Second, we have previously outlined a general approach to ascertaining whether a statute is an enhancement or a substantive offense. In *People* v.

---

[2]Section 208(d), added in 1990, provides, and at the time of the crime provided: "If the person is kidnapped with the intent to commit rape, oral copulation, sodomy, or rape by instrument, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years." For purposes of brevity, we at times in this opinion refer to this crime as "kidnapping for rape."

[3]Section 207(a), provides, and at the time of the crime provided: "Every person who forcibly, or by any other means of instilling fear, steals or takes, or holds, detains, or arrests any person in this state, and carries the person into another country, state, or county, or into another part of the same county, is guilty of kidnapping." The language "into another part of the same county" was added in 1905 in response to *Ex parte Keil* (1890) 85 Cal. 309 [24 P. 742], in which this court held that the forcible removal of a person 20 miles from San Pedro to Santa Catalina Island, both in Los Angeles County, was not kidnapping within the meaning of the statute as it existed at that time. (*Id.* at pp. 310-312; see code comrs. note, 47 West's Ann. Pen. Code (1988 ed.) foll. § 207, p. 518.)

*Hernandez* (1988) 46 Cal.3d 194 [249 Cal.Rptr. 850, 757 P.2d 1013], we held that section 667.8, which at the time provided for an "additional term of three years" for any person convicted of a felony violation of various sexual offenses, "who, for the purpose of committing [that] sexual offense, kidnapped the victim in violation of Section 207," was an enhancement, not a substantive offense. (46 Cal.3d at pp. 200, 207-208.) We observed that "an enhancement 'means an additional term of imprisonment added to the base term.' " (*Id.* at p. 207, quoting Cal. Rules of Court, rule 405(c).) In contrast, a separate offense base term "involve[s] . . . a choice among three possible terms prescribed by statute. (§ 1170, subd. (a)(2); [Cal. Rules of Court,] rule 405(b) . . . .)" (46 Cal.3d at p. 207.) Section 667.8 provided for a single three-year term, and this "of itself suggest[ed] the section is not a separate offense." (46 Cal.3d at p. 207.) Moreover, "[i]ts language referring to 'an additional term' of three years is likewise consistent with other enhancement statutes." (*Ibid.*)

We noted that "The fact that section 667.8 includes an element in addition to those necessary to prove a violation of section 207 or the sex crimes specified, certainly d[id] not imply it has defined a new crime. Enhancements typically focus on an element of the commission of the crime or the criminal history of the defendant which is not present for all such crimes and perpetrators and which justifies a higher penalty than that prescribed for the offenses themselves. That is one of the very purposes of an enhancement's existence." (*People* v. *Hernandez, supra,* 46 Cal.3d at pp. 207-208.) However, "reference to the wording of the statute and its specification of one term leaves no doubt that an enhancement rather than a substantive crime is involved." (*Id.* at p. 208.)

Since *People* v. *Hernandez, supra,* 46 Cal.3d 194, the Legislature has modified the way in which it drafts enhancements. As we recently observed in *People* v. *Hall* (1994) 8 Cal.4th 950, 958-959 [35 Cal.Rptr.2d 432, 883 P.2d 974], "Although the [Determinate Sentencing Act] from its inception included sentence enhancements, originally the statutes imposing such enhancements provided only a single term, rather than a range of possible terms." (*Id.* at pp. 958-959.) "[I]n 1989, the Legislature amended several existing enhancement provisions by replacing the single term of imprisonment, specified for the enhancement, with a range of three possible terms of imprisonment." (*Id.* at p. 959.) Thus, contrary to what we suggested in *Hernandez, supra,* it is no longer dispositive that a statute is a separate crime if it prescribes confinement for one of three terms. We note, however, that the enhancement in *Hall* used the language, "an additional term" and "enhancement." (*Id.* at p. 954; § 12022.5, subds. (a), (f).) When, as in this case, the statute neither uses the language "an additional term" nor "enhancement," and does prescribe confinement for one of three terms, i.e., five,

eight, or eleven years, we have no basis on which to characterize it as an enhancement.

Third, a finding that section 208(d) is a separate crime, and not an enhancement, is supported by its legislative history. Section 208(d) was originally introduced as an amendment to section 209, subdivision (a) (hereafter section 209(a)),[4] which proscribes kidnapping for ransom, extortion, or reward.[5] (Sen. Bill No. 2079 (1989-1990 Reg. Sess.) as introduced Feb. 20, 1990, p. 1.) As such, it was expressly characterized as "a felony" or separate crime. (*Ibid.*) "The purpose of th[e original] bill [was] to make the punishment for kidnaping for sex crime purposes equal to the punishment for kidnaping for financial gain." (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.) June 7, 1990, p. 1.) "Sponsors argue[d] that the penalty for kidnaping for the purpose of committing sexual offenses should be as severe as the penalty for kidnaping for ransom or robbery." (*Id.* at p. 2.)

Apparently in response to certain opposition to both the proposed lack of an asportation requirement and the severity of the penalty, a compromise was reached and Senate Bill No. 2079 was moved from section 209(a) to section 208(d), and amended to provide that the penalty would be five, eight, or eleven years. (Assembly Com. on Public Safety, analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.) p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.) pp. 2-3; letter dated Sept. 7, 1990, from Sen. Roberti to Governor Deukmejian, p. 2.) However, nowhere in the subsequent legislative history is section 208(d) characterized as an enhancement. Rather, this history refers to persons found "*guilty* of kidnapping

---

[4]Section 209(a) provides, and at the time of the crime provided: "Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away another person by any means whatsoever with intent to hold or detain, or who holds or detains, that person for ransom, reward or to commit extortion or to exact from another person any money or valuable thing, . . . is guilty of a felony, and . . . shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to any such act suffers death or bodily harm, or is intentionally confined in a manner which exposes such person to a substantial likelihood of death, or shall be punished by imprisonment in the state prison for life with the possibility of parole in cases where no such person suffers death or bodily harm."

[5]The amended section 209(a) would have provided: "Any person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains . . . *the* individual for ransom, reward, or to commit extortion or to exact from another person any money or valuable thing, *or to commit rape, oral copulation, sodomy, or rape by instrument*, . . . is guilty of a felony and . . . shall be punished by imprisonment in the state prison for life without possibility of parole in cases in which any person subjected to . . . *the* act suffers death or bodily harm, or is intentionally confined in a manner which exposes . . . *the* person to a substantial likelihood of death, or shall be punished by imprisonment in the state prison for life with the possibility of parole in cases where . . . *the* person . . . *does not suffer* death or bodily harm." (Sen. Bill No. 2079 (1989-1990 Reg. Sess.) § 1, italics in original.)

another for the purpose of committing rape," or "*convicted* of kidnapping for the purposes of rape," and compares section 208(d) with the crimes of kidnapping for purposes of robbery and ransom, which are clearly separate crimes from, not enhancements to, simple kidnapping. (Cal. Youth and Adult Correctional Agency, Analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.) Aug. 31, 1990, p. 1; Assembly Com. on Public Safety, Analysis of Sen. Bill No. 2079, *supra*, p. 1; Sen. 3d reading analysis of Sen. Bill No. 2079 (1989-1990 Reg. Sess.) Aug. 27, 1990, p. 1.)

Finally, we note that at the time of section 208(d)'s enactment, section 667.8, subdivision (a), already provided a three-year enhancement for any person convicted of a felony violation of various sexual offenses "who, for the purpose of committing that sexual offense, kidnapped the victim in violation of Section 207 . . . ." The legislative history of section 208(d) expressly notes the existence of this enhancement. (Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2079, *supra*, p. 2.) Accordingly, if the Legislature had intended that section 208(d) be merely an enhancement to section 207, it would have most likely added it as an amendment to section 667.8, not section 208.

In sum, we conclude that section 208(d) is a separate offense from, not an enhancement to, section 207(a).[6]

## B. *Standard for Sufficiency of the Evidence of Asportation*

█ Because section 208(d) proscribes "kidnapp[ing]" and not merely holding and detaining an individual, it must be construed to contain an asportation requirement. (See *People* v. *Knowles* (1950) 35 Cal.2d 175, 179-180 [217 P.2d 1]; *People* v. *Macinnes* (1973) 30 Cal.App.3d 838, 842-844 [106 Cal.Rptr. 589].) We now turn to the question of whether that asportation requirement is satisfied by the standard for section 207(a) simple kidnapping, or by section 209, subdivision (b) kidnapping for robbery, or aggravated kidnapping.

### 1. *Kidnapping Asportation Standards*

At the time of the crime here,[7] there existed two distinct standards of asportation for kidnapping, depending on whether the kidnapping was for

---

[6]As noted above, the Court of Appeal concluded that defendant had waived any challenge to the form of the pleading by failing to file a demurrer. Defendant does not contest that conclusion in this court.

[7]In 1993, the Legislature enacted section 209.5, which proscribes kidnapping during the commission of a carjacking, and carries a life sentence. Section 209.5 "shall only apply if the movement of the victim is beyond that merely incidental to the commission of the carjacking,

robbery (aggravated kidnapping) under section 209, subdivision (b) (hereafter section 209(b)), or was a simple kidnapping under section 207(a).[8]

■  Kidnapping for robbery, or aggravated kidnapping, requires movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself. (*People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]; *In re Earley* (1975) 14 Cal.3d 122, 127-128 [120 Cal.Rptr. 881, 534 P.2d 721].) These two aspects are not mutually exclusive, but interrelated.

As for the first prong, or whether the movement is merely incidental to the crime of robbery, the jury considers the "scope and nature" of the movement. (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1131, fn. 5.) This includes the actual distance a victim is moved. However, we have observed that there is no minimum number of feet a defendant must move a victim in order to satisfy the first prong. (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1128 [to define the required movement "in terms of a specific number of inches or feet or miles would be open to a charge of arbitrariness"].)

In addition, we have since *Daniels, supra,* analyzed the question of whether the movement was incidental to the commission of the underlying crime by considering the context of the environment in which the movement occurred. (*People* v. *Daniels, supra,* 71 Cal.2d at pp. 1131, fn. 5, 1140; *In re Crumpton* (1973) 9 Cal.3d 463, 466 [106 Cal.Rptr. 770, 507 P.2d 74].) Thus, in *Daniels,* the defendants, "in the course of robbing and raping three women in their own homes, forced them to move about their rooms for distances of 18 feet, 5 or 6 feet, and 30 feet respectively." (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1126.) We held that these brief movements were merely incidental to the commission of robbery. (*Id.* at p. 1140.) We observed, "Indeed, when in the course of a robbery a defendant does no more than move his victim around inside the premises in which he finds him—whether it be a residence, as here, or a place of business or other enclosure—his conduct generally will not be deemed to constitute the offense proscribed by section 209. Movement across a room or from one room to another, in short,

the victim is moved a substantial distance from the vicinity of the carjacking, and the movement of the victim increases the risk of harm to the victim over and above that necessarily present in the crime of carjacking itself." (§ 209.5, subd. (b).) As we subsequently explain, section 209.5 appears to incorporate the aggravated kidnapping standard of section 209, subdivision (b).

[8]Forced movement of the victim is not a required element of section 209(a) kidnapping for ransom, extortion, or reward. (*People* v. *Bigelow* (1984) 37 Cal.3d 731, 755, fn. 14 [209 Cal.Rptr. 328, 691 P.2d 994, 64 A.L.R.4th 723]; *People* v. *Macinnes, supra,* 30 Cal.App.3d at pp. 842-844.)

cannot reasonably be found to be asportation 'into another part of the same county.' (Pen. Code, § 207.)" (*Ibid.*)

In *Daniels*, we relied in part on our reasoning in *Cotton* v. *Superior Court* (1961) 56 Cal.2d 459 [15 Cal.Rptr. 65, 364 P.2d 241], which concluded that the defendants could not be charged with simple kidnapping under the facts of that case. (*People* v. *Daniels, supra,* 71 Cal.2d at pp. 1129-1131, 1139.) We stated, however, "We do not imply that the *facts* of *Cotton* [movement of the victim 15 feet] are controlling, i.e., that movements of the *scope and nature* of those in *Cotton* could not support a conviction under section 209 if the defendant's intent was to commit robbery. Such a case, when and if it arises, must be decided on its own facts. All we say here is that *movements of the scope and nature* of those in the case before us . . . fall within the *language* of *Cotton* which excludes from the definition of kidnaping movements 'incidental to' the underlying crime." (71 Cal.2d at p. 1131, fn. 5, some italics added.)

Likewise, in *In re Crumpton, supra,* 9 Cal.3d 463, the victim was forcibly moved 20 to 30 feet behind a truck parked on the service station premises. (*Id.* at p. 466.) We concluded that this movement did not satisfy the first part of the *Daniels* test, but was merely incidental to the crime of robbery. (*Ibid.*) We found "[p]articularly relevant . . . *People* v. *Williams* (1970) 2 Cal.3d 894 . . . , in which we held a service station, including the adjacent outdoor areas, to be analogous to a place of business or enclosure within our meaning in *Daniels*. In *Williams* the victims were forced to move to several different sites on the service station grounds. If such conduct was insufficient to activate section 209, the movement in the present case is also inadequate for that purpose." (*Ibid.*)

The second prong of the *Daniels* test refers to whether the movement subjects the victim to a substantial increase in risk of harm above and beyond that inherent in robbery. (*In re Earley, supra,* 14 Cal.3d at p. 131; *People* v. *Lara* (1974) 12 Cal.3d 903, 908, & fn. 4 [117 Cal.Rptr. 549, 528 P.2d 365].) This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes. (See, e.g., *People* v. *Lara, supra,* 12 Cal.3d at p. 908 & fn. 4 [examples of such risk of harm "include not only desperate attempts by the victim to extricate himself but also unforeseen intervention by third parties"]; *In re Earley, supra,* 14 Cal.3d at p. 132 ["asportation gave rise to dangers, not inherent in robbery, that an auto accident might occur or that the victim might attempt to escape from the moving car or be pushed therefrom by [defendant]"]; cf. *People* v. *Caudillo* (1978) 21 Cal.3d 562, 574

[146 Cal.Rptr. 859, 580 P.2d 274] [aggravated kidnapping includes review of such factors as "the defendant's motivation to escape detection" and "the possible enhancement of danger to the victim resulting from the movement."].) The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased. (*In re Earley, supra*, 14 Cal.3d at p. 132; *People v. Lara, supra*, 12 Cal.3d at p. 908.)

The asportation requirement for simple kidnapping is less stringent than that for aggravated kidnapping, and less clear. We have stated that certain factors other than the actual distance a victim is moved are not to be considered. (*People v. Caudillo, supra*, 21 Cal.3d at p. 574.) However, we have resisted setting a specific number of feet as the required minimum distance, and have further required that the movement must be "substantial in character," while offering little guidance as to what that term means. (*Id.* at p. 573; *People v. Stanworth* (1974) 11 Cal.3d 588, 601 [114 Cal.Rptr. 250, 522 P.2d 1058].) As one Court of Appeal has observed, "Jury confusion is understandable. Without a frame of reference, 'substantial' has little or no meaning." (*People v. Daniels* (1993) 18 Cal.App.4th 1046, 1053, fn. 5 [22 Cal.Rptr.2d 877].)

For the reasons that follow in part II.B.3., we conclude that the asportation standard for kidnapping for rape is that applied to aggravated kidnapping. We first briefly review the relevant and decidedly nonlinear history of the simple kidnapping, kidnapping for robbery, and kidnapping for ransom, reward, or extortion statutes.

## 2. *Development of Asportation Standards*

In *People v. Knowles, supra*, 35 Cal.2d 175, we held that the "holds and detains" language of former section 209 was "a deliberate abandonment of the requirement of movement of the victim" traditionally present in kidnapping. (35 Cal.2d at p. 180.) Thus, detention without asportation of a robbery victim was sufficient. (*Id.* at pp. 179-181.) In 1951, section 209 was amended to provide that the "holds or detains" language applied only to kidnapping for ransom or extortion. That remains the law today, and hence kidnapping under section 209(a) has no asportation requirement. (*People v. Macinnes, supra*, 30 Cal.App.3d at pp. 842-844.) However, section 209(b) kidnapping for robbery is committed only where the defendant "kidnaps or carries away" the victim.

In *People v. Chessman* (1951) 38 Cal.2d 166 [238 P.2d 1001], we upheld the defendant's conviction for kidnapping for the purpose of robbery, with infliction of bodily harm, for which he had received the death penalty. (*Id.* at

pp. 172, 192-193.) The defendant had forced one victim to walk 22 feet at gunpoint from the car she was in to his car, and there committed "sex crimes." (*Id.* at p. 192.) We stated, "It is the fact, not the distance, of forcible removal which constitutes kidnaping in this state." (*Id.* at p. 192.)

In *People* v. *Wein* (1958) 50 Cal.2d 383 [326 P.2d 457], we applied *Chessman* to uphold the defendant's convictions of kidnapping for robbery, with infliction of bodily harm, for which he also had received the death penalty. (*Id.* at pp. 391, 399-400.) The defendant, in the course of raping and robbing several women within the confines of their homes, forced each to move either from one room to another or across a single room, for distances ranging from a few feet to more than 50 feet. (*Id.* at pp. 391-393, 399-400.) We observed that "the Legislature has been in session several times since the Chessman case was decided, and it has not seen fit to amend the kidnaping law to limit the rule we announced. If the section, as interpreted by this court, is regarded as too harsh, the remedy is for the Legislature to redefine kidnaping, and not for this court to engraft some uncertain distance limitation onto the plain language of the section." (*Id.* at p. 400.)

In *Cotton* v. *Superior Court, supra,* 56 Cal.2d 459, we implicitly declined to extend the *Chessman/Wein* rule to section 207 simple kidnapping. In *Cotton,* the AFL-CIO picketed a labor camp which housed certain farm workers. (56 Cal.2d at p. 461.) The picketers attempted to verbally persuade the farm workers to join their cause. (*Ibid.*) Fighting ensued during which one man was dragged 15 feet. (*Id.* at pp. 461, 463-464.) We stated that "the only movements that occurred [here] were those natural in a riot or assault. . . . All 'asportation' . . . would appear to be only incidental to the assault and rioting." (*Id.* at p. 464.) We concluded that the Legislature could not have intended that every assault could also be prosecuted as kidnapping, so long as the slightest movement was involved. (*Id.* at p. 465.) "Where the movement is incidental to the alleged assault," section 207 should not apply. (56 Cal.2d at p. 465.) We issued a peremptory writ ordering the trial court to dismiss the charges of conspiracy to commit kidnapping, and kidnapping. (*Id.* at pp. 460-461, 465.)

In *People* v. *Daniels, supra,* 71 Cal.2d 1119, we abrogated the *Chessman/Wein* rule for kidnapping for robbery, relying in part on *Cotton* v. *Superior Court, supra,* 56 Cal.2d 459. (71 Cal.2d at pp. 1129-1131, 1139.) As noted earlier, in *Daniels,* the defendants "in the course of robbing and raping three women in their own homes, forced them to move about their rooms for distances of 18 feet, 5 or 6 feet, and 30 feet respectively." (*Id.* at p. 1126.) The jury fixed the penalty at death on the kidnapping counts. (*Id.* at p. 1122.)

We reversed the kidnapping convictions, observing that under the *Chessman/Wein* rule, " 'The criminologically nonsignificant circumstance that the

victim was . . . moved *incident to* the crime determines whether the offender lives or dies.' " (*People* v. *Daniels, supra,* 71 Cal.2d at p. 1138.) We held that the asportation required for kidnapping for robbery consisted of a movement of the victim that is not merely incidental to the commission of the robbery, and which substantially increases the risk of harm over and above that necessarily present in the crime of robbery itself. (*Id.* at p. 1139.)

In *People* v. *Williams, supra,* 2 Cal.3d 894, we stated, "Although *Daniels* was directed toward a construction of the statute defining aggravated kidnaping (Pen. Code, § 209), it is clear that the considerations therein enunciated are applicable as well to simple kidnaping (Pen. Code, § 207)." (2 Cal.3d at p. 901.) In *People* v. *Stanworth, supra,* 11 Cal.3d 588, however, we retreated from this position, and held that the *Daniels* test was "not applicable to [simple] kidnaping charged as a violation of section 207 but only to charges of kidnaping for robbery bottomed on section 209, commonly referred to as aggravated kidnaping." (*Id.* at p. 598.) We distinguished *People* v. *Williams, supra,* on the ground that "*Williams* involved a conviction of aggravated kidnaping under section 209 which was reduced by the court to simple kidnaping under section 207 in order to avoid the harsher penalty imposed by the former section. . . . Under these circumstances, we evaluated the conviction in the light of *Daniels*." (11 Cal.3d at p. 599, fn. 11.)

In *Stanworth, supra,* we observed that "the 'movement' factor of the *Daniels* rule is uniquely suited to section 209 and not to section 207," because section 209 kidnapping, "by definition, involves the underlying offense of robbery. In contrast, kidnaping, as defined by section 207, may occur in the absence of another crime. Thus where only simple kidnaping is involved, it is clear that the victim's movements cannot be evaluated in the light of a standard which makes reference to the commission of another crime." (*People* v. *Stanworth, supra,* 11 Cal.3d at p. 600, fn. omitted.)

Rather, "the determining factor in the crime of [simple] kidnaping is the actual distance of the victim's movements; and further, that the minimum movements necessary for the commission of the crime are present where the victim is forcibly taken 'into *another part* of the same county' . . . . Finally, because the victim's movements must be more than slight . . . or 'trivial' . . . , they must be substantial in character to constitute kidnaping under section 207." (*People* v. *Stanworth, supra,* 11 Cal.3d at p. 601, italics in *Stanworth*; see *People* v. *Brown* (1974) 11 Cal.3d 784, 788-789 [114 Cal.Rptr. 426, 523 P.2d 226] [concluding that where a victim was taken throughout her house and then at most 75 feet outside the house, the asportation was "trivial"] & fn. 6 ["Arbitrary boundaries established by

buildings or other enclosures, ownership of property, fences, and other points of reference will themselves vary in size and distance. Thus the character of the victim's movements cannot be determined *simply* on the basis that the victim remained inside or was taken outside a particular area." (Italics added)].) We reiterated that to define the phrase "into another part of the same county" " 'in terms of a specific number of inches or feet or miles would be open to a charge of arbitrariness.' " (*People* v. *Stanworth, supra,* 11 Cal.3d at pp. 600-601, quoting *People* v. *Daniels, supra,* 71 Cal.2d at p. 1128; see *People* v. *Daniels, supra,* 18 Cal.App.4th at p. 1052 [error to instruct jury that as a matter of law 500 feet is a substantial distance].)[9]

Thus, *Stanworth* relied on the absence of an associated crime to explain why *Daniels* was inapplicable to simple kidnapping. However, it noted that *Cotton* v. *Superior Court, supra,* 56 Cal.2d 459, which had invoked the simple kidnapping standard, had involved the associated crime of assault. (*People* v. *Stanworth, supra,* 11 Cal.3d at pp. 599-600.) *Stanworth* itself went on to apply the simple kidnapping standard to asportations resulting in the associated crimes of rape and murder. (*Id.* at pp. 602-603.)

We subsequently offered an alternative reason why the *Daniels* test was inapplicable to section 207 kidnapping. We explained, " 'both *Daniels*, involving section 209 kidnaping, and *Cotton* . . . , involving section 207 kidnaping, construe the term 'kidnaping' to mean movements which are not merely incidental to associated crimes.' . . . However, in view of the fact that . . . 'section 209 prescribes increased punishment when the kidnaping is for the purpose of ransom or robbery' . . . , violation of section 209 requires *not only* that the asportation be not merely incidental to the associated crime of robbery (i.e., that there be a kidnaping) but also that it 'substantially increase the risk of harm over and above that necessarily present in the crime of robbery itself.' " (*In re Earley, supra,* 14 Cal.3d at p. 129, italics in original, fn. omitted.) Thus, in *Earley,* we relied on the punishment assigned by the Legislature to determine what the substantive element of asportation entailed.

---

[9]As one Court of Appeal subsequently observed: "The increasing complexity of the law marches on. What *Stanworth* and *Brown* seem to teach is this: the test of simple kidnaping *is not* (1) whether the movement is incidental to an underlying crime . . . ; (2) whether there is an increase in the risk of harm above that present in an underlying crime . . . ; (3) a mathematical formula . . . ; or (4) the crossing of arbitrary boundaries. . . . Thus we are left to ponder what the movement *is* in simple kidnaping. We are told it 'is the actual distance of the victim's movements' and they must be substantial in character . . . but, of course, it is not a question of mathematical measurement or crossing of arbitrary boundaries. Thus, we are led in circles." (*People* v. *Stender* (1975) 47 Cal.App.3d 413, 422 [121 Cal.Rptr. 334], italics in original.)

In *People* v. *Caudillo, supra,* 21 Cal.3d 562, overruled on other grounds in *People* v. *Escobar* (1992) 3 Cal.4th 740, 749-751 [12 Cal.Rptr.2d 586, 837 P.2d 1100], this court, while reiterating *Stanworth*'s language that the movement must be "substantial in character," rejected consideration of certain factors other than actual distance in assessing the sufficiency of the evidence of asportation for simple kidnapping. In *Caudillo,* defendant forcibly moved a rape victim, Maria, for an *"unspecified* distance from the elevator to the storage room, and from the storage room to her apartment." (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 572, italics in original.) We concluded that this was "not substantial movement within the meaning of Penal Code section 207." (*Ibid.*)

We observed: "The People seek to introduce considerations—other than actual distance—as determinative of what constitutes 'sufficient movement' of the victim to constitute the offense of" section 207 kidnapping. (*People* v. *Caudillo, supra,* 21 Cal.3d at p. 574.) The People claimed "we should consider Maria's movement substantial because defendant moved Maria to the storage room to avoid detection, thereby increasing her danger, and then waited 20 minutes before he moved her to her apartment." (*Ibid.*) We rejected this argument stating, "Neither the incidental nature of the movement, the defendant's motivation to escape detection, nor the possible enhancement of danger to the victim resulting from the movement is a factor to be considered in the determination of substantiality of movement for the offense of [simple] kidnaping." (*Ibid.*) We concluded that "the judgment of conviction of simple kidnaping must fall for lack of evidentiary support." (*Id.* at p. 575.)

■ The issue we address in this case is whether the asportation standard for section 208(d) kidnapping is derived from that used for simple or aggravated kidnapping. Only one Court of Appeal opinion has significantly explored this issue. In *People* v. *Bradley, supra,* 15 Cal.App.4th 1144, a case relied on by the Court of Appeal in this case, the victim was moved 50 to 60 feet from the open street, and forcibly led around a building to the inside of a separate structure, an enclosed dumpster area. (*Id.* at p. 1154.) The court first determined that the standard of asportation for section 208(d) was that for simple kidnapping. (15 Cal.App.4th at p. 1153.) It based this conclusion on the difference in severity in punishment under section 208(d) as opposed to the life sentence prescribed by section 209(b). (15 Cal.App.4th at pp. 1152-1153.) The court stated, "Evidently, the more serious penalty of life imprisonment imposed in aggravated kidnapping is in large part responsible for the impetus to use the *Daniels* risk-related movement test. Therefore, since the Legislature added kidnapping with the intent to commit rape to

section 208, and not section 209, and since the penalty is determinate and not life as found in aggravated kidnapping, we conclude kidnapping with intent to commit rape warrants the same test for movement as . . . simple kidnapping." (*Id.* at p. 1153.)

Applying the section 207 simple kidnapping asportation test, the court then stated, "distance, in and of itself, is not the only factor probative of asportation" under sections 207 and 208(d). (15 Cal.App.4th at p. 1153.) "Consideration must be given to the change in surroundings between the point of capture and destination." (*Ibid.*) "A distance of 50 feet in the open desert is of far less importance to fulfilling the goal of a sexual perpetrator than 50 feet in the city where characteristics of location change much more quickly." (*Id.* at p. 1154.)

The court concluded that the 50-to-60-foot movement was "not a trivial or inconsequential movement, in light of the boundaries which were traversed over this distance and the unlit and secluded nature of the destination providing the necessary environment to commit the targeted crime without interruption or detection. . . . [T]he inherent danger from sexual attack in the secluded dumpster area was considerably more than the public phone area." (*People* v. *Bradley*, *supra*, 15 Cal.App.4th at p. 1154.)[10]

---

[10]It is apparent that *Bradley* reviewed the sufficiency of the evidence of asportation for simple kidnapping on bases arguably inconsistent with *People* v. *Caudillo*, *supra*, 21 Cal.3d 562. Perhaps in response to the frustration of not having an articulable standard for the meaning of "substantial distance," we note that other Court of Appeal opinions have also reviewed the sufficiency of the evidence for simple kidnapping on similarly inconsistent bases. In *People* v. *Daly* (1992) 8 Cal.App.4th 47 [10 Cal.Rptr.2d 21], the victim was moved "approximately 40 feet across a parking structure in [defendant's] unsuccessful effort to get her into his van." (*Id.* at p. 57.) The Court of Appeal noted that "The entire movement was within the parking structure and we cannot say on this record *the risk of harm to the victim was increased* by the movement of this short distance." (*Ibid.*, italics added.) The court concluded that the evidence of asportation was insufficient to support a simple kidnapping conviction. (*Id.* at pp. 56-57.)

In *People* v. *Williams* (1990) 220 Cal.App.3d 1165 [269 Cal.Rptr. 705], the Court of Appeal upheld a simple kidnapping conviction where the victims were transported for more than an 840-foot block. (*Id.* at p. 1171.) In addition to the actual distance, the court concluded that the victims' movement was not "slight or trivial" because the roadway was a major street in a large town, the "late hour of the evening offered the victims several last desperate chances for escape," and one of the victims "attempted to escape from defendant's hold only because of the change in location to an area where the number of people on the street made her feel somewhat safe." (*Ibid.*) The court observed that while *Stender*'s analysis had been criticized in part in *Caudillo*, "it is apparent that consideration may be given to the locations and boundaries traversed." (220 Cal.App.3d at p. 1171.) While we have not directly addressed this issue since *Caudillo*, at least one of our own cases has implicitly examined the character of the movement as well as the actual distance in determining whether there was sufficient evidence of asportation for simple kidnapping. (See *People* v. *Sheldon* (1989) 48 Cal.3d 935, 952-953 [258 Cal.Rptr. 242, 771 P.2d 1330] [while no evidence of actual distance, concluding

### 3. *Asportation Standard Applicable to Section 208(d)*

The parties articulate somewhat different tests for determining whether the evidence of asportation is sufficient under section 208(d). Defendant contends that we "should adopt the *Daniels* test for all kidnappings which involve an 'associated crime'" such as kidnapping for rape under section 208(d). "The 'substantial movement' test should only be retained where there is no 'associated crime.'" "[A]n exception to the 'substantial distance' test could be developed for the rare case in which the forcible movement resulted in the complete isolation of the victim for a substantial period of time."

The Attorney General, relying on *People* v. *Bradley, supra,* 15 Cal.App.4th 1144, argues that the section 207 simple kidnapping asportation standard should apply to section 208(d), but suggests expanding this test to include evaluation of both the "distance and character of the movement." Such a test would consider the actual distance and any environmental changes resulting from the move, and whether those changes "increase risk of danger to the victim" by "decreas[ing] the likelihood of detection, rescue or escape . . . ." It would not require a substantial increase in the risk of harm to the victim.

We discern little meaningful distinction between these two tests. In effect the parties' disagreement is not over whether the simple or aggravated kidnapping asportation standard should apply, but over whether the increase in risk of harm to the victim must be "substantial."

We conclude that defendant has the better argument, and that the two-part *Daniels* asportation test should apply to section 208(d) kidnapping for rape. As noted above, section 208(d) provides that "If the person is kidnapped with the intent to commit rape, oral copulation, sodomy, or rape by instrument, the kidnapping is punishable by imprisonment in the state prison for 5, 8, or 11 years." This language is strikingly similar to section 209(b), or kidnapping for robbery, which provides that "Any person who kidnaps or carries away any individual to commit robbery shall be punished by imprisonment in the state prison for life with possibility of parole." "Where a statute is framed in language of an earlier enactment on the same or an analogous subject, and that enactment has been judicially construed, the Legislature is presumed to have adopted that construction." (*People* v. *Harrison* (1989) 48 Cal.3d 321, 329 [256 Cal.Rptr. 401, 768 P.2d 1078].)

movement of victim solely within garage and adjoining home "too minor to constitute [simple] kidnapping"].) Because we conclude that the asportation standard for section 208(d) is that used for aggravated kidnapping, we need not address this issue here.

Thus, in using language parallel to that of section 209(b), which has been construed to require the two-part *Daniels* asportation test, the Legislature undoubtedly intended to incorporate a similar asportation requirement into section 208(d).

In reaching our conclusion, we are mindful of the fact that we have previously declined to extend the *Daniels* test to either simple kidnapping or a kidnapping involving an associated crime other than robbery. Rather, as demonstrated above, we have applied the section 207 simple kidnapping standard in cases involving asportation for purposes of committing associated crimes such as rape and murder, *People* v. *Stanworth, supra,* 11 Cal.3d at pages 602-603, and assault, *Cotton* v. *Superior Court, supra,* 56 Cal.2d at pages 463-465. However, in contrast to the section 207 language we construed in *Stanworth,* culpability under section 208(d) cannot "occur in the absence of another crime," or an attempt to commit a crime. (*People* v. *Stanworth, supra,* 11 Cal.3d at p. 600.) Rather, culpability under section 208(d) will always involve the associated crimes or attempted crimes of "rape, oral copulation, sodomy, or rape by instrument." (§ 208(d).) Thus, the " 'movement' factor of the *Daniels* rule is uniquely suited to section 209" *and* section 208(d) because these forms of kidnapping by definition proscribe kidnapping for the purpose of committing a particular offense. (See *People* v. *Stanworth, supra,* 11 Cal.3d at p. 600.)

We are also conscious of the fact that the only occasion in which the Legislature appears to have expressly adopted the *Daniels* risk of harm language is in section 209.5, which prohibits robbery of a vehicle or carjacking. The question arises, therefore, why, if the Legislature intended this risk of harm standard to apply to section 208(d), it did not use such explicit language here. We are guided by the fact that section 209.5 was enacted in October of 1993, or approximately three years after section 208(d). Within that time period, *People* v. *Bradley, supra,* 15 Cal.App.4th 1144, had been decided. As noted above, this case held that the asportation test for section 208(d) was that used for simple kidnapping. Thus, the Legislature may have concluded that more explicit guidance to the courts was necessary. "The Legislature, of course, is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof." (*People* v. *Harrison, supra,* 48 Cal.3d at p. 329; *People* v. *Hall, supra,* 8 Cal.4th at pp. 961-962.)

Nor are we persuaded, as *People* v. *Bradley, supra,* 15 Cal.App.4th 1144, concluded, that we should continue to define the *substantive* asportation standard of a kidnapping statute solely on the basis of the punishment prescribed. Rather, our obligation is to construe the statute as a whole. We

are disinclined to "perpetuate[] dubious law for no better reason than that it exists . . . ." (*Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 696 [34 Cal.Rptr.2d 386, 881 P.2d 1083] (dis. opn. of Arabian, J.).)

Indeed, it is no longer clear that when the act of rape, oral copulation, sodomy, or rape by instrument is accomplished, the penalties between section 208(d), as we interpret it, and section 209 are that disparate. Rather, under the recently enacted section 667.61, when a "defendant kidnapped the victim of the present offense and the movement of the victim substantially increased the risk of harm to the victim over and above that level of risk necessarily inherent in the underlying offense in subdivision (c)," the punishment of the crime is enhanced by an indeterminate term of 25 years to life. (§ 667.61, subds. (a), (d)(2).)

Thus, the standard of asportation for section 208(d) kidnapping requires that the movement of the victim be for a distance which is more than that which is merely incidental to the commission or attempted commission of rape, oral copulation, sodomy, or rape by instrument, and that this movement substantially increase the risk of harm to the victim over and above that necessarily present in the commission or attempted commission of these crimes.

Because we interpret section 208(d) to incorporate the aggravated kidnapping asportation standard, we need not reach the question of whether *Caudillo*'s rejection of certain factors other than the actual distance traveled should be revisited. We recognize that *Caudillo*'s narrow approach might be subject to the criticism that it fails to appreciate that a primary reason forcible asportation is proscribed by the kidnapping statutes is the increase in the risk of harm to the victim that arises from the asportation. (See *People* v. *Williams, supra*, 220 Cal.App.3d at p. 1171 [danger sought to be prevented by simple kidnapping statute realized when victim, who was driving, abandoned moving vehicle to escape, causing car to crash with another]; *People* v. *Stender, supra*, 47 Cal.App.3d at p. 423 ["200 feet becomes more a substantial distance when it is considered it accomplished the purpose of removing the victim from the ready help of her mother"]; cf. *People* v. *Ford* (1966) 65 Cal.2d 41, 58 [52 Cal.Rptr. 228, 416 P.2d 132] [simple kidnapping " 'inherently dangerous to human life' "].) For purposes of this case, however, we simply note that if a factual scenario similar to that in *Caudillo* arose today, it would most likely be prosecuted under section 208(d). Contrary to our language in *Caudillo*, this evaluation would include review of such factors as "the defendant's motivation to escape detection," and "the possible enhancement of danger to the victim resulting from the movement." (*People* v. *Caudillo, supra*, 21 Cal.3d at p. 574.)

## C. *Sufficiency of the Evidence of Asportation Here*

■ The test on appeal for determining if substantial evidence supports a conviction is whether " 'a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt.' " (*People* v. *Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) In making this determination, we " 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*Ibid.*)

■ The jury here applied the *Daniels* test to find that defendant moved Elizabeth a "substantial distance" and that this movement "substantially increased" her risk of physical injury "over and above those to which such person is normally exposed in the commission of the crime of rape." Applying the same test, we conclude that the evidence of asportation in this case was sufficient to support the kidnapping conviction.

Here, Elizabeth was forcibly moved 105 feet at night from the parking lot of a closed store to the other side of a wall located at the edge of the lot. She was forced to sit against the wall and beside a small tree, 34 feet from the street. The wall blocked the view of any passersby from the parking lot side, and the tree and the bushes at the end of the wall limited detection of Elizabeth from the street. While the area beyond the wall bordered on a two-lane street, it was undeveloped, and made up of dirt and rocks. Finally, while it was light enough for Elizabeth to observe defendant's actions in this area, and for defendant to be able to see the blood on Elizabeth's underwear, the two were located right next to each other. There is no evidence as to whether they were detectable from the street.

The jury could reasonably have concluded that Elizabeth's forcible movement for this distance and under these circumstances was not merely incidental to the attempted commission of rape, and substantially increased her risk of harm. Thus, we cannot conclude as a matter of law that there was insufficient evidence of asportation to support the jury's verdict.

### Conclusion

For the reasons set forth above, the judgment of the Court of Appeal is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

Lucas, C. J., Kennard, J., Baxter, J., George, J., and Werdegar, J., concurred.

**MOSK, J., Dissenting.**—In my view the evidence of asportation was insufficient to support the conviction of kidnapping in violation of Penal Code section 208, subdivision (d).

The jury, as the majority state, convicted defendant of a violation of Penal Code section 207, subdivision (a), and found true an allegation that he kidnapped Elizabeth R. with the intent to rape under Penal Code section 208, subdivision (d). As do the majority, I review this case as if defendant had been convicted of the substantive offense of kidnapping with intent to rape under the latter provision although in fact there was no rape.

For this kidnapping-for-rape case, the majority adopt the kidnapping-for-robbery test set forth in *People* v. *Daniels* (1969) 71 Cal.2d 1119 [80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677]. The majority explain, "the standard of asportation for section 208(d) kidnapping requires that the movement of the victim be for a distance which is more than that which is merely incidental to the commission or attempted commission of rape, oral copulation, sodomy, or rape by instrument, and that this movement substantially increase the risk of harm to the victim over and above that necessarily present in the commission or attempted commission of these crimes." (Maj. opn., *ante*, p. 22.)

Applying this test, the majority conclude that "the evidence of asportation in this case was sufficient to support the kidnapping conviction." (Maj. opn., *ante*, p. 23.)

I agree with the test the court has adopted. But under our test I conclude no reasonable trier of fact could have found a *substantial* increase in the risk of harm above that necessarily present in the underlying crime. Therefore the evidence did not support the verdict, and the Court of Appeal correctly reversed the judgment.

The risk of harm accompanying the crime of attempted rape is high by itself. To prove kidnapping with the intent to rape, with its required *substantial* increase in that risk, the risk of harm must therefore be very high indeed. In most cases to establish such an increase in risk the prosecution must prove that the perpetrator removed the victim to a secluded "secondary location" where privacy affords the perpetrator great control and the victim very little. Many asportations to commit sexual assaults probably do involve removals of this type and hence do elevate the risk of harm sufficiently to satisfy our test. Indeed, as I understand their view, the police generally believe that when a female victim follows an armed male assailant's order to enter a vehicle for removal to a secluded secondary location, she risks not only rape, but also death.

This case, however, presents different facts. The jury could not have learned whether the secondary location was significantly more secluded than the "primary location"—i.e., the place where Elizabeth was accosted—and therefore could not properly have determined that there was a substantial increase in the risk of harm to her.

Defendant accosted Elizabeth about 10:30 p.m. on April 24, 1991, in the City of Fontana. At that hour and place, of course, it was nighttime. But the photographic exhibits of the crime scene all contained, in counsel's words, "one fatal flaw": they were "all taken during the daytime . . . ." Before the trial's evidentiary phase the court forbade the jurors to visit the scene themselves to make a nighttime assessment, and the court did not provide the jury with an actual tour of the scene. Finally, the investigating detective never visited the scene at the hour of night when the crimes occurred. In sum, the jury never obtained an accurate understanding whether the secondary location was substantially more isolated at night than was the primary.

In fact there was no substantial increase in isolation. The record reveals that a streetlight stood 65 feet from the primary location and about 125 feet from the secondary location. The secondary location was well enough lit for Elizabeth to be able to scrutinize defendant's features and for them to see spots of blood on her undergarments caused by a previous medical condition. Indeed, she testified that the light was of "pretty even" intensity during the entire course of events. There was thus no significant increase in seclusion attributable to decreased illumination.

Nor was there a significant increase in seclusion attributable to the presence of physical barriers to observation by third parties at the secondary location. The primary location was a deserted parking lot. Defendant led Elizabeth from there to the other side of a low wall that separated the parking lot from some train tracks, and had her sit on the ground next to the wall at a point about 34 feet from the street. The wall was only 43 inches high; hence, as long as defendant and Elizabeth were walking or standing, they could be seen from any direction. As far as can be discerned, the wall impaired only the view from the empty parking lot after Elizabeth was made to sit down. And the tree beside which Elizabeth was made to sit was so scrawny and so bare of foliage that it would not appear out of place in a drought-parched veldt; at no hour of the day or night could it have aided concealment.

On this record no reasonable trier of fact could have found the asportation of Elizabeth "substantially increased her risk of harm." (Maj. opn., *ante*, p. 23.) "[E]ven if the asportation here may conceivably have increased the risk

of harm to [Elizabeth] in some degree, it cannot have 'substantially' increased it as required by *Daniels*." (*People* v. *Lara* (1974) 12 Cal.3d 903, 911 [117 Cal.Rptr. 549, 528 P.2d 365] (conc. & dis. opn. of Mosk, J.).)

I would affirm the judgment of the Court of Appeal.

Appellant's petition for a rehearing was denied February 16, 1995.