Filed 7/24/14  P. v. Packer CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E057813 |
| v. | (Super.Ct.No. FSB702342) |
| THOMAS ELVIN PACKER, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kyle S. Brodie, Judge.  Affirmed.

Doris M. LeRoy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Eric A. Swenson, Kristine A. Gutierrez, and Laura A. Glennon, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant Thomas Elvin Packer of 16 counts of lewd acts upon a child under the age of 14 (Pen. Code, § 288, subd. (a)), and found true multiple victim allegations as to counts 6 through 16 (Pen. Code, § 667.61, subds. (b), (c), (e)). The trial court determined allegations that defendant had suffered two prior convictions of serious or violent felonies to be true. (Pen. Code, §§ 667.61, subds. (b)-(i), 1170.12, subd. (a).) Defendant was sentenced to 841 years to life, consisting of consecutive terms of 75 years to life on counts 6 through 16, consecutive to a 16-year determinate term imposed for the convictions in counts 1 through 5.

In this appeal, defendant contends the prosecutor committed misconduct during voir dire. We conclude this claim was not properly preserved and is otherwise lacking in merit. Accordingly, the judgment will be affirmed.

## I. FACTUAL BACKGROUND

Defendant does not challenge the sufficiency of evidence to support the judgment; thus, the facts may be briefly stated. Defendant repeatedly molested his two young stepdaughters over an approximate 14-year period. Defendant began to molest the older girl, L., soon after he moved in with the victims' mother and her children. L. was nine years old when the molestations commenced. Defendant continued to molest L. until she was 17 years old. Shortly after L. turned 18, she moved out of the home. L.'s younger sister, M., was 11 years old when L. left the home. After L. moved out, defendant turned his lewd attentions to M. Defendant continually molested M. until she was 13 years old, at which time she ran away from home. M. went to live with her grandparents. When M.

2

told her grandparents about defendant's molestations, they convinced her to go to the police and report the crimes.

Defendant had previously been convicted of molesting two other young girls in the 1980's, and both of those victims testified at trial. A. was defendant's stepdaughter from a prior marriage. Defendant continually molested A. from the time she was six or seven years old until she was almost 11. While she was living in Montclair, A. invited her friend, D., to spend the night at her house. D. was 10 or 11 years old at this time. Defendant molested D. both times she stayed at his house. D. told her sister about the molestations, and the sister called the police. Defendant was arrested and sentenced to prison for molesting A. and D.

At trial, defendant testified and denied molesting the victims in this case, M. and L. Defendant admitted having molested A. and D. Defendant served a prison term of eight years for his convictions in the earlier case.

## II. DISCUSSION

A. *The Questioning of Potential Jurors*

During the prosecutor's voir dire of the prospective jurors, the following colloquy took place:

"[The Prosecutor:] Have you ever, or has anyone heard of, a child making false allegations of sexual abuse? Do you know what circumstances that would be? Have you—do you remember any specific situation?

3

"[Defense Counsel:]  Your Honor, we are getting close to prejudging the evidence here.

"[The Court:]  Objection is overruled.

"[The Prosecutor:]  Let me ask a different question anyway.  . . . (Juror No. 5), have you ever heard of a situation where someone, or actually anybody, that someone has been sexually assaulted but did not report right away?

"[Prospective Juror:]  Yes.

"[The Prosecutor:]  Can you think of a reason why someone wouldn't report right away?

"[Defense Counsel:]  Your Honor, I'm going to object.  That calls for prejudgment of the evidence.

"[The Court:]  Pretty close, [Prosecutor].

"[The Prosecutor:]  How about—do you think children that are molested always tell right away?

"[Prospective Juror:]  No, they don't.

"[The Prosecutor:]  Okay.  Can you think of reasons why?

"[Defense Counsel:]  Same objection.

"[Prospective Juror:]  Yes.

"[The Court:]  Overruled.

"[Prospective Juror:]  Yes, plenty of them.

"[The Prosecutor:]  Can you give me an example?

4

"[Prospective Juror:]  Scared, feeling guilty, feeling like it's their fault.

"[The Prosecutor:]  Okay.  If—let's see who hasn't been picked on.  [¶] . . . (Juror No. 18), I haven't really picked on you.  Would you tend to disbelieve someone if they took months or years to report a crime like that?

"[Defense Counsel:]  Your Honor, that calls for flat prejudgment.

"[The Court:]  I think that's right, [Prosecutor], sustain the objection."

Defense counsel did not request that the jury be admonished, and made no further mention of the currently disputed line of questioning.  Prospective Juror No. 18 was subsequently excused for cause.  Prospective Juror No. 5 eventually served on the jury.  Defense counsel did not exhaust his peremptory challenges.

B.  *Applicable Law*

A prosecutor who uses deceptive or reprehensible methods to persuade the court or jury commits misconduct, and such actions require reversal under the federal Constitution when they infect the trial with such "'unfairness as to make the resulting conviction a denial of due process.'"  (*Darden v. Wainwright* (1986) 477 U.S. 168, 181 [91 L.Ed.2d 144, 106 S.Ct. 2464]; see *People v. Cash* (2002) 28 Cal.4th 703, 733.) Under state law, a prosecutor who uses such methods commits misconduct even when those actions do not result in a fundamentally unfair trial.  (*People v. Frye* (1998) 18 Cal.4th 894, 969; see *People v. Fuiava* (2012) 53 Cal.4th 622, 679.)

"[A] reviewing court will not review a claim of misconduct in the absence of an objection and request for admonishment at trial."  (*People v. Gionis* (1995) 9 Cal.4th

5

1196, 1215; see also *People v. Scott* (1997) 15 Cal.4th 1188, 1217.) "[O]nly if an admonition would not have cured the harm is the claim of misconduct preserved for review." (*People v. Alfaro* (2007) 41 Cal.4th 1277, 1328; *People v. Earp* (1999) 20 Cal.4th 826, 858.)

"It is, of course, well settled that the examination of prospective jurors should not be used '"to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, or to instruct the jury in matters of law."' [Citations.]" (*People v. Fierro* (1991) 1 Cal.4th 173, 209.) "'[I]t is not a proper object of voir dire to obtain a juror's advisory opinion based upon a preview of the evidence.'" (*People v. Butler* (2009) 46 Cal.4th 847, 860.) "A prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record." (*People v. Frye, supra*, 18 Cal.4th at p. 971; see also *People v. Carter* (2005) 36 Cal.4th 1114, 1178.)

While it is not a proper function of voir dire examination of prospective jurors to educate the jury panel to the particular facts of the case, counsel must be "allowed to ask questions reasonably designed to assist in the intelligent exercise of peremptory challenges whether or not such questions are also likely to uncover grounds sufficient to sustain a challenge for cause." (*People v. Williams* (1981) 29 Cal.3d 392, 407.) Either party is entitled to ask prospective jurors questions that are specific enough to determine if those jurors harbor bias that would cause them not to follow an instruction on the issues

6

presented in the case, although an inquiry must not be so specific that it requires prospective jurors to prejudge an issue based on a summary of the evidence likely to be presented. (*People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 47; *People v. Burgener* (2003) 29 Cal.4th 833, 865.) Proper inquiry is that which is ""“directed to whether, without knowing the specifics of the case, the juror has an ‘open mind’”"" on the issues presented. (*People v. Butler, supra*, 46 Cal.4th at p. 859; see also *People v. Solomon* (2010) 49 Cal.4th 792, 838.)

In our examination of the prosecutor's questions and comments during voir dire we consider whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion. (*People v. Ayala* (2000) 23 Cal.4th 225, 284.) "‘[A]s a general matter, it is unlikely that errors or misconduct occurring during voir dire questioning will unduly influence the jury's verdict in the case. Any such errors or misconduct "prior to the presentation of argument or evidence, obviously reach the jury panel at a much less critical phase of the proceedings, before its attention has even begun to focus upon the . . . issue[s] confronting it."'" (*People v. Seaton* (2001) 26 Cal.4th 598, 636, citing *People v. Medina* (1995) 11 Cal.4th 694, 741.)

C. *The Prosecutor Did Not Engage in Prejudicial Misconduct During Jury Voir Dire*

Defendant acknowledges that, although an objection was raised and sustained in response to the prosecutor's alleged misconduct during voir dire, the defense made no request that the jury be admonished. Thus, the issue of forfeiture is presented. As previously discussed, in order "‘[t]o preserve for appeal a claim of prosecutorial

7

misconduct, the defense must make a timely objection at trial and request an admonition; otherwise, the point is reviewable only if an admonition would not have cured the harm caused by the misconduct.'" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1130, quoting *People v. Price* (1991) 1 Cal.4th 324, 447.) An admonition would have easily corrected the minimal amount of harm that could have possibly been caused by the alleged misconduct in this case; therefore, defendant's claim has been forfeited. Despite the absence of any request for admonishment, we proceed to the merits of the claim of misconduct to respond to defendant's implied assertion that any prejudice could not readily have been cured by the court's intervention.

Upon our review of the record, we find that the prosecutor's questions and remarks constituted neither improper comment without evidentiary substantiation nor an effort to indoctrinate the jury. The prosecutor did not seek to offer evidence on the Child Sexual Abuse Accommodation Syndrome.[1] The inquiries were directed at the past experiences and prior knowledge of the jurors in an effort to determine their probable impartiality.[2] As we read the record here, the prosecutor was undertaking an appropriate examination of possible bias in light of the past personal exposure of the prospective

---

[1] Evidence concerning the Child Sexual Abuse Accommodation Syndrome was subsequently presented to the jury through the testimony of an expert witness.

[2] Notably, defense counsel used a similar type of questioning to determine how the prospective jurors might react to evidence that his client had suffered a prior conviction for a similar offense. Defense counsel addressed this line of questioning to Juror No. 5, the same juror involved in the prosecutor's allegedly improper questioning. Defense counsel subsequently elected to retain Juror No. 5 on the jury.

8

jurors to incidents of delayed reporting in cases involving child molestation, not attempting to offer evidence on the facts of the specific case. We discern no impermissible attempt by the prosecutor to influence the prospective jurors to vote guilty based on the facts of the case; nor do we perceive an unreasonable likelihood that the jury understood or applied any of the remarks during voir dire in an erroneous or improper manner as comments on the evidence.

Assuming arguendo that any of the prosecutor's questions or comments during voir dire could be said to constitute misconduct, any such error was not prejudicial even under a standard of beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824].) The trial court sustained defendant's objection to the prosecutor's final disputed question, thereby limiting any possible prejudicial effect. The jury was correctly instructed on the prosecution's burden of proof beyond a reasonable doubt with CALCRIM No. 220, both before and after the presentation of evidence. The jury was also twice given CALCRIM No. 222, which instructed that statements of the attorneys were not evidence. We ordinarily presume the jury followed the instructions and disregarded the prosecutor's remarks to the extent they were inconsistent with the instructions. (*People v. Osband* (1996) 13 Cal.4th 622, 717.) Moreover, the prosecution's evidence was very strong. The jury had no difficulty resolving this case, reaching its verdicts following less than two hours of deliberation. Defendant has not shown that the court's rulings and instructions were inadequate to prevent any possible prejudice from the prosecutor's alleged misconduct during voir dire,

9

nor do we discern any reasonable possibility that the instructions were inadequate to cure any error.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

RICHLI
J.

MILLER
J.