Filed 10/30/24  P. v. Plascencia CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSE ANDRES PLASCENCIA,<br><br>    Defendant and Appellant. | G062581<br><br>(Super. Ct. No. 18CF2175)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Steven D. Bromberg, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel

Rogers and Kristen K. Chenelia, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

Defendant Jose Andres Plascencia appeals after a jury convicted him of one count of kidnapping to commit rape and multiple counts of forcible rape against a young child under circumstances which led the jury to find true kidnapping related aggravating circumstances under the "One Strike" law (Pen. Code, § 667.61).[1] The trial court imposed one life with the possibility of parole sentencing term, along with five concurrent 25-years-to-life terms for each of the One Strike offenses.

Plascencia contends there was insufficient evidence to support two of the One Strike findings, arguing there was no evidence demonstrating movement of the victim substantially increased the risk of harm to her over and above the harm inherent in the underlying offenses. He also asserts the trial court was required to stay the indeterminate sentence on the kidnapping to commit rape count and the court's imposition of five One Strike indeterminate terms violates an applicable former provision of the One Strike law which limited the imposition of One Strike terms on multiple sex offenses committed against a single victim on a single occasion. Lastly, Plascencia urges us to remand the matter so he may have the opportunity to make a record for potential use at a future youth offender parole hearing, claiming section 3051's express exclusion of One Strike offenders from such parole hearing eligibility violates the equal protection guarantee of the federal Constitution.

---

[1] All further statutory references are to the Penal Code.

2

We find merit in some of Plascencia's arguments, but not others. Having thoroughly reviewed the record, substantial evidence supports the challenged One Strike findings. And, based on the Supreme Court's recent decision in *People v. Williams* (2024) 17 Cal.5th 99 (*Williams*), Plascencia's equal protection challenge to section 3051 fails. That said, we agree with the Attorney General's concession that the trial court should have stayed the sentence imposed for the kidnapping to commit rape offense, and we agree the court applied an improper analysis for determining how many One Strike sentences may properly be imposed under an applicable former subdivision of the One Strike law. Accordingly, we affirm the convictions and reverse the judgment solely with respect to Plascencia's sentence, remanding for resentencing on the One Strike offenses with direction to stay the imposed sentence on the kidnapping to commit rape count.

## FACTS

Although Plascencia was not arrested for the crimes of which he was convicted until 2016, the crimes took place on an evening in 1999 when he was 18 years old. A complaint charged him and a coperpetrator, Ismael Salgado, with one count of kidnapping to commit rape (§ 209, subd. (b)(1)), as well as five counts of forcible rape (§ 261, subd. (a)(2)). It also alleged, pursuant to section 667.61, subdivisions (a) and (d)(2), that Plascencia and Salgado kidnapped the victim in the commission of the forcible rape offenses and that movement of the victim during the commission of those offenses

"substantially increased the risk of harm to the victim over and above the level of risk necessarily inherent in the [forcible rape] offense."[2]

On the evening in question, R.C. was walking with her friend, C.C., near a City of Santa Ana park which had a community center and a sports complex. R.C. was 11 years old and C.C. was 13 years old. As they were leaving the area, a four-door sedan with two male occupants approached them. The males, later identified as Plascencia and Salgado, tried to persuade R.C. and C.C. to get into the car. Although the girls initially refused, they eventually got in the car. R.C. sat in the front passenger seat alongside Salgado, who was driving, and C.C. sat in the back behind the driver's seat, with Plascencia seated directly behind R.C.

The car drove a short distance to a street where C.C. asked they be dropped off. When the car stopped, C.C. got out, but Salgado forced R.C. to remain in the car by pulling her hair.

Leaving C.C. behind, Salgado drove to a nearby gas station while he and Plascencia talked about raping R.C. Salgado got out of the car and went into the gas station mini mart. Plascencia remained in the car, covered R.C.'s mouth, pushed her down to the floor of the front seat, and told her that if she was not quiet they would kill her. Video captured by surveillance cameras at the gas station showed Salgado in the mini mart shortly after 7 p.m., and the parties stipulated at trial that sunset was just before 5:30 p.m. on that day.

---

[2] The One Strike law has been amended on numerous occasions since its inception. We cite to a particular version of the statute only if an amendment to the Legislation occurring after the time of the offenses in this case makes a particular version relevant to an issue in this appeal.

After Salgado returned to the car, he drove to the parking lot of a middle school located directly across the street and parked the car. At trial, R.C. testified it was dark outside, but she could not recall if there were lights in the parking lot or if there were other people or cars in the lot. Salgado climbed into the front passenger seat where R.C. was seated, pulled off her clothes, and raped her despite her saying "no" and asking to be taken home.[3] R.C. was then pulled into the back seat of the car. There, Salgado once again raped her while Plascencia tried to get her to perform other sexual acts. Plascencia also raped her.

With R.C. forced down in the back seat of the car by Plascencia, Salgado drove to a street or parking lot next to a high school which was located adjacent to the middle school. He and Plascencia each raped R.C. again. When they were done, Salgado told her to get dressed, cautioned her not to say anything, and dropped her off at a nearby street corner.

R.C. recognized being very close to her grandmother's house, so she ran to the house and told a relative living there that she had been raped. Police were notified. That night, R.C. was interviewed by law enforcement and had two sexual assault medical exams. She spoke with law enforcement again two days later. DNA evidence from the medical exam performed on R.C. was eventually used to link Plascencia and Salgado to the crimes more than 15 years later.

At trial, the defense relied on testimony from defendant and an expert. Defendant testified that he could not recall encountering R.C. and

---

[3] The details of the sexually assaultive behavior are not challenged by Plascencia and are not relevant to the issues raised on appeal, so we refer to Salgado and Plascencia's acts by the more generic term of rape.

C.C. or anything about the alleged crimes. He relayed that on the morning in question, he used methamphetamine and then drank various types of alcohol all day with Salgado, starting around midday. The last thing he remembered from that day was driving around with Salgado; he was the passenger and Salgado was driving. The next thing Plascencia said he remembered was waking up the next day at home with a massive headache.

A defense expert testified that at a certain level of alcohol consumption, people may experience an alcohol related blackout in which they experience short term memory loss. The expert further opined, based on hypothetical facts consistent with Plascencia's testimony, that someone in such circumstances who could not remember anything was intoxicated enough to experience an alcohol related blackout.

The jury found defendant guilty on all counts and found true the One Strike related allegation tied to each forcible rape count. The trial court sentenced him to life with the possibility of parole for the kidnapping to commit rape count, as well as five concurrent terms of 25 years to life for each of the forcible rape counts based on the One Strike findings.

Plascencia timely appealed.

DISCUSSION

Plascencia claims three sentencing related errors: (1) a lack of substantial evidence to support two of the One Strike findings; (2) the trial court's failure to properly apply an applicable former subdivision of section 667.61 in sentencing him on the forcible rape counts; and (3) the court's unwarranted failure to stay the sentence on the kidnapping to commit rape count. Additionally, he urges us to remand the matter to allow him the opportunity to make a record of youth mitigating factors for potential use at a future youth offender parole hearing. We agree the trial court applied the

6

incorrect legal analysis in deciding the allowable number of One Strike terms under an applicable former subdivision of section 667.61, and we agree the court should have stayed the imposed kidnapping to commit rape sentence. In all other respects, we find no merit in Plascencia's arguments.

I.

SUFFICIENCY OF THE EVIDENCE FOR THE SECTION 667.61 FINDINGS

"Section 667.61 'was enacted in 1994 as part of what is commonly known as the [O]ne [S]trike law [citation].' [Citation.] The [O]ne [S]trike law provides that a person who is convicted of specified sex offenses, including forcible rape and sodomy, shall be punished to an indeterminate term of either 15 or 25 years to life if there are one or more aggravating circumstances." (*People v. Palmore* (2000) 79 Cal.App.4th 1290, 1295.) Aggravating circumstances include situations in which, for example, the perpetrator kidnaps the victim, commits the sex offense during a burglary, inflicts great bodily injury, uses a deadly weapon, or sexually victimizes more than one person. (§ 667.61, subds. (d) & (e).) The law's purpose "is 'to ensure serious and dangerous sex offenders . . . receive lengthy prison sentences upon their first conviction,' 'where the nature or method of the sex offense "place[d] the victim in a position of *elevated vulnerability*."'" (*People v. Alvarado* (2001) 87 Cal.App.4th 178, 186.)

The aggravating circumstance pled and found true by the jury with respect to each of the five forcible rape counts in this case is that Plascencia "kidnapped [R.C.] . . . and the movement of [R.C.] substantially increased the risk of harm to [her] over and above that level of risk necessarily inherent in the underlying [forcible rape] offense." (§ 667.61, subd. (d)(2).) The prosecution's argument to the jury on this point was that

7

there were two relevant movements of R.C.—one from the gas station to the middle school and the other from the middle school to the high school.

Plascencia concedes there is sufficient evidence to support the finding as it relates to the three rape counts grounded in events that took place at the middle school, but he argues there is insufficient evidence when it comes to the two rape counts tied to actions occurring in the high school area. He asserts "there is a complete absence of evidence" that the movement of R.C. from the middle school area to the adjacent high school area substantially increased the risk of harm to her. Among other things, he mentions evidence that it was dark in both the middle school and high school areas, all three individuals remained in the car throughout, and the high school area abutted a residential neighborhood.

Viewing the record through a substantial evidence lens, which we must, we are not persuaded. Our task is to determine whether there is evidence that is ""reasonable in nature, credible, and of solid value,"" which when viewed in the light most favorable to the prosecution, a rational trier of fact could have found the challenged essential element of the aggravating circumstance true beyond a reasonable doubt. (*People v. Perkins* (2016) 5 Cal.App.5th 454, 464 (*Perkins*).)

As the Supreme Court has recognized, the One Strike substantial increase in the risk of harm analysis "is difficult to capture in a simple verbal formulation that would apply to all cases." (*People v. Dominguez* (2006) 39

Cal.4th 1141, 1151 (*Dominguez*).) [4] Thus, "each case must be considered in the context of the totality of its circumstances." (*Dominguez*, at p. 1152.) Among the relevant considerations are any "decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." (*People v. Rayford* (1994) 9 Cal.4th 1, 13 (*Rayford*).) "The fact that these dangers do not in fact materialize does not, of course, mean that the risk of harm was not increased." (*Id.* at p. 14.)

Here, Plascencia and Salgado forcibly moved R.C. from the middle school parking lot to an area bordering the high school. Although the schools were adjacent to one another, there were meaningful differences between the two locations. The middle school parking lot was along a major street and directly across from a well-lit gas station. The gas station was "pretty busy" that night and a police officer testified the street would have had traffic at the time. In contrast, the location next to the high school was in a residential area, necessarily removed from the busy traffic and the light shed from the gas station. Given these circumstances, one could rationally conclude that moving R.C. from the first school to the second significantly decreased the likelihood of detection.

---

[4] We rely on cases concerning the One Strike kidnapping aggravating circumstance, as well as cases, like *Dominguez*, which concern the pre-1997 standard for an aggravated kidnapping offense. Prior to a 1997 legislative change, the crime of aggravated kidnapping required the same showing as the One Strike aggravating circumstance—that movement of the victim substantially increased the risk of harm to the victim. (See *People v. Robertson* (2012) 208 Cal.App.4th 965, 978-980 [describing Legislative changes to aggravated kidnapping offense].)

The decreased likelihood of detection is underscored by evidence concerning the duration of time spent at the middle school, which according to initial statements by R.C. to law enforcement was roughly one hour. The longer the time spent in a location next to a well-traveled street and across from a busy, lighted area, at a time when no one else was parked in the middle school parking lot, the greater the likelihood that a passerby would discover what was taking place. Moving to a completely different location lessened that possibility, which, in turn, gave Plascencia and Salgado additional time to further victimize R.C. (See *Rayford, supra*, 9 Cal.4th at p. 13 ["attacker's enhanced opportunity to commit additional crimes" is factor to consider].)

There was also evidence from which one could perceive an increase in danger in R.C.'s foreseeable attempt to escape during the movement to the high school area. The only option for escape from a moving vehicle is to exit while it is moving. The greater risk of harm inherent in such circumstances, as compared to escape from a stationary vehicle, is evident. (See *People v. Kelly* (2016) 245 Cal.App.4th 1119, 1130.)

Cases relied upon by Plascencia in which there was insufficient evidence of a substantial increase in the risk of harm to the victim are readily distinguishable. In *People v. Waqa* (2023) 92 Cal.App.5th 565, the victim was moved a few feet from a small stall in a public bathroom into an immediately adjacent larger stall. (*Id*. at pp. 574, 579.) The evidence demonstrated "the degree of concealment each stall offered did not significantly differ" and "[n]either stall afforded a realistic opportunity to escape." (*Id*. at p. 581.) And, in *Perkins*, the victim was moved from a bathroom to a bedroom within a small apartment. (*Perkins, supra*, 5 Cal.App.5th at pp. 470-471.) These very short distance movements, which resulted in no meaningful change to the

surrounding vicinity, are materially different than the circumstances of R.C.'s movement in this case.

Looking at the totality of the circumstances, there is substantial evidence supporting the jury's conclusion that the movement of R.C. from the middle school parking lot to the high school area substantially increased the risk of harm to her beyond that inherent in the commission of the underlying forcible rapes. (See, e.g., *Rayford, supra*, 9 Cal.4th at p. 23 [victim moved 105 feet at night from parking lot of closed store to other side of short wall at edge of parking lot]; *Dominguez, supra*, 39 Cal.4th at p. 1153 [victim moved 25 feet from road down 10 or 12 foot embankment]; *People v. Diaz* (2000) 78 Cal.App.4th 243, 248-249 [victim moved from area near lighted bus stop to adjacent darkened park]; *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1049 [victim moved 133 feet down sidewalk at night, from area by porch light to extremely dark area].) Because that is the only contested aspect of the challenged kidnapping aggravating circumstance findings, the findings must stand.

## II.

### ONE STRIKE SENTENCING WITH A SINGLE VICTIM

At the time of the offenses in 1999, former subdivision (g) of section 667.61 stated that the indeterminate term sentence specified in the statute could only "be imposed on the defendant once for any offense or

offenses committed against a single victim during a single occasion."[5] (Stats.1998, ch. 936, § 9); see also *People v. Jones* (1997) 58 Cal.App.4th 693, 719.) Although not defined in the former statute, our high court clarified that "'single occasion'" meant "committed in close temporal and spatial proximity." (*People v. Jones* (2001) 25 Cal.4th 98, 107 (*Jones*).)

Plascencia contends the trial court violated this sentencing limitation when it imposed five indeterminate One Strike sentences. He notes that in making its determination, the court improperly relied on case law concerning the application of section 654 in the context of a continuous sexual assault. (See *People v. Harrison* (1989) 48 Cal.3d 321, 339 [new and separate offense committed for section 654 purposes each time new and separate penetration occurs].) From his perspective, all the offenses at a given school should be considered a single occasion and subject to only one indeterminate One Strike sentence.

The Attorney general concedes the court imposed an excessive number of One Strike sentences under the circumstances and agrees the matter should be remanded for the trial court to apply the correct legal analysis.

Having reviewed the record, we accept the Attorney General's concession as properly made. We further agree with Plascencia that the trial

---

[5] In 2006, the Legislature amended section 667.61 to, inter alia, remove former subdivision (g) and add subdivision (i) which mandates the imposition of consecutive One Strike sentences under specified circumstances. (Stats. 2006, ch. 337, § 33, pp. 2165-2167.) We agree with the parties that the proper provision to apply under the circumstances was that which was in effect at the time Plascencia committed the offenses in 1999. (See *People v. Riskin* (2006) 143 Cal.App.4th 234, 244 [constitutional right against ex post facto application of laws].)

court employed the incorrect legal analysis to determine the proper number of One Strike indeterminate sentences. Accordingly, the matter must be remanded to allow the court to make an appropriate determination by applying the legal standard articulated in *Jones*. (*Jones, supra*, 25 Cal.4th at p. 107.)

### III.

### KIDNAPPING TO COMMIT RAPE SENTENCE

The trial court imposed a life with the possibility of parole term for the kidnapping to commit rape conviction (§ 209, subd. (b)(1)), with that sentence to run concurrent to the One Strike indeterminate terms. Plascencia contends this is error because it punishes him twice for the same kidnapping act. The Attorney General concedes the sentence on the kidnapping to commit rape count should have been stayed for that reason, and we agree.

Section 209, subdivision (b) articulates the offense of kidnapping to commit rape, among other offenses, and prescribes the associated life with the possibility of parole punishment. Subdivision (d) of the same section, however, expressly addresses the interplay of that punishment in a situation involving a section 667.61 allegation. It states: "Subdivision (b) does not supersede or affect [s]ection 667.61. A person may be charged with a violation of subdivision (b) and [s]ection 667.61. However, a person may not be punished under subdivision (b) and [s]ection 667.61 for the same act that constitutes a violation of both subdivision (b) and [s]ection 667.61." (§ 209, subd. (d).)

In this case, the act prohibited by section 209, subdivision (b), which the jury found Plascencia committed, is kidnapping to commit rape. And the jury's true finding on the section 667.61 allegation was based on the same act of kidnapping. Based on the proscription in section 209, subdivision

13

(d), Plascencia could not be punished for both. Accordingly, and because we are remanding the matter to the trial court for resentencing, we shall direct the trial court to stay the sentence on the kidnapping to commit rape count. (See *People v. Adams* (2018) 28 Cal.App.5th 170, 192-194 [sentence for kidnapping to commit rape must be stayed based on section 667.61, subdivision (d)(2) qualifying circumstance].)

IV.

### *FRANKLIN* HEARING

Plascencia's last contention is that he should be afforded a hearing, often referred to as a *Franklin*[6] hearing, to develop a record for use at a future youth offender parole hearing. In making this argument, he acknowledges that the youth offender parole hearing statute, section 3051, expressly does not apply to him. However, he argues section 3051 violates equal protection by distinguishing between young adults convicted of a One Strike sex offense, on one hand, and young adults convicted of first degree murder or another "more serious" sex crime, on the other hand.

The Attorney General urges us to find Plascencia forfeited his arguments by failing to request a *Franklin* hearing, and failing to challenge the constitutionality of section 3051, below. We need not decide whether and under what circumstances forfeiture of these issues may occur. Assuming arguendo there was a forfeiture, even if we exercised our discretion to consider them (see *People v. Sheena K.* (2007) 40 Cal.4th 875, 887, fn. 7), it is of no avail to Plascencia.

Under section 3051, "certain persons incarcerated for crimes committed at a young age may be eligible for early release on parole. One

---

[6] *People v. Franklin* (2016) 63 Cal.4th 261.

14

factor relevant to the decision to release is the offender's amenability to rehabilitation based on recognized attributes of youth. Section 3051, however, expressly excludes certain groups from its purview, including defendants convicted of forcible sexual offenses and sentenced under the 'One Strike' law [citation]. [Citation.] By contrast, those convicted of murder (aside from young adults convicted of special circumstance murder) are not categorically excluded." (*Williams, supra*, 17 Cal.5th at p. 110.)

The Supreme Court recently rejected the very equal protection argument asserted by Plascencia concerning the differing treatment of young adults convicted of murder and young adult One Strike offenders. (*Williams, supra*, 17 Cal.5th at p. 116.) Applying a rational basis standard of review (*id.* at p. 113), the court explained that "'[i]n designing section 3051, the Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed.'" (*Id.* at p. 127.) Focusing on the One Strike law, the court emphasized legislative history which disclosed that "the Legislature had significant concerns regarding recidivism of One Strike offenders and the serious nature of the offenses they commit." (*Id.* at p. 129.) Because the court found those concerns, and the concern with protecting the public from persons who have committed serious sex offenses with aggravating circumstances, to be "'realistically conceivable,'" it concluded they were a rational basis for excluding One Strike offenders from the purview of section 3051. (*Id.* at p. 125.)

Both parties called our attention to the pendency of *Williams* in their initial briefing, and we requested supplemental briefing from them after the Supreme Court issued its decision. In his supplemental brief, Plascencia

argues *Williams* is not dispositive of the full scope of his argument because it was limited to whether the distinction between youths convicted of murder and youths convicted of a One Strike offense violates equal protection. It did not decide whether equal protection is violated by differentiating between youth One Strike offenders and youths convicted of other sex crimes such as a violation of section 288.7.[7]

While the issue in *Williams* concerned a different comparison group, we find the Supreme Court's reasoning equally applicable to a rational basis analysis of the statute's distinguishment between young adult One Strike offenders and young adults with convictions for other sex crimes. Indeed, the court expressly rejected an argument made by the *Williams* defendant concerning the habitual sexual offender statute, section 667.71, again emphasizing the One Strike law's concern about the aggravated circumstances of the qualifying crimes. (*Williams, supra*, 17 Cal.5th at p. 133.) Simply put, "'[t]he lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime.' [Citation.] Because these 'legislative policy choices' are not 'irrational,' they are not 'impermissible as a matter of equal protection.'" (*Id*. at p. 127.)

## DISPOSITION

The judgment is affirmed as to the convictions and reversed solely with respect to the sentence imposed. The matter is remanded to the trial court for resentencing in accordance with the applicable statutes and

---

[7] Section 288.7 mandates an indeterminate life sentence for engaging in sexual intercourse, sodomy, oral copulation, or sexual penetration with a child 10 years of age or younger.

rules, including section 667.61, former subdivision (g) as articulated herein, and with directions to stay the sentence imposed for the kidnapping to commit rape count.


DELANEY, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.