Filed 12/19/24  P. v. Jo CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B332220 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA105123) |
| v. | |
| UNG RAE JO, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Scott T. Millington, Judge.  Affirmed.

Spolin & Dukes, Aaron Spolin and Caitlin Dukes for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran and Taylor Nguyen, Deputy Attorneys General for Plaintiff and Respondent.

———————————————

The jury found Ung Rae Jo guilty of kidnapping to commit rape (Pen. Code,[1] § 209, subd. (b)(1); count 1), assault with intent to commit a felony (§ 220, subd. (a)(1); count 2), attempted forcible rape (§§ 261, subd. (a)(2), 664; count 3), sexual penetration by use of force (§ 289, subd. (a)(1)(A); count 4), forcible oral copulation (§ 287, subd. (c)(2)(A); counts 5 & 6), injuring the mother of his child (§ 273.5, subd. (a); counts 7, 11 & 13), first degree residential burglary with person present (§ 459; count 8), criminal threats (§ 422, subd. (a); count 9), forcible rape (§ 261, subd. (a)(2); count 10), dissuading a witness by force or threat (§ 136.1, subd. (a)(1); count 12), stalking (§ 646.9, subd. (b); count 14), and misdemeanor contempt of court (§ 166, subd. (c)(1); count 15). The trial court sentenced Jo to a consecutive term of 34 years plus life in prison. The court additionally imposed a concurrent sentence of 364 days.

On appeal, Jo contends the evidence was insufficient to support his conviction for kidnapping to commit rape in count 1. We affirm the trial court's judgment.

## FACTS[2]

### A.    *Prosecution Evidence*

Jo and the victim, M.J., lived together for approximately 32 years and had one son. The couple owned and operated a shoe

---

[1] All further statutory references are to the Penal Code.

[2] Our recitation of the facts is limited to facts that relate to the July 3, 2021 kidnapping and attack, as Jo only challenges the kidnapping to commit rape conviction on appeal.

2

store together.  Their relationship was very difficult for M.J.  Jo continuously disrespected and harassed her.  She kept hoping the situation would improve, but it did not.  M.J. moved out of their shared residence around May 12, 2021.

M.J. continued working at the shoe store after she left Jo.  The store had a retail area on the main floor and a storage area located on the floor below it.  The storage area had only one exit.  There were desks at the front of the storage room and several aisles of merchandise further inside.  The storage room had approximately 16 surveillance cameras, but at the relevant time 4 were not functioning.

On July 3, 2021, M.J. and Jo were working at the shoe store together.  They were the only people working at the store that day.  Between approximately 11:00 and 11:30 a.m., M.J. was fulfilling orders in the storage room when Jo approached her and began dragging her towards the back of the room.[3]  M.J. grabbed onto the shelving in an attempt to stop Jo from dragging her, thereby causing merchandise to fall from the shelves.  Jo dragged and pushed M.J. into an aisle next to some shelving, further away from the door.  M.J. struggled with Jo, but he physically overpowered her and attempted to have vaginal sex with her.  Jo pinned M.J.'s legs with his legs and laid on top of her.  He attempted to make her orally copulate him by putting his penis over her face.  M.J. continued to scream and resist.  She told Jo to stop and turned her legs to block him.  Jo covered M.J.'s mouth with his hand to prevent her from screaming.  M.J. knew that the security cameras would capture the attack.  She repeatedly asked

---

[3] A video recording that captured the attack was played for the jury.

Jo how he could do this when it would be recorded. Jo kept trying to insert his penis into M.J.'s vagina but was unable to. He spread her legs apart, but she kept closing them. Jo's penis touched the outer part of M.J.'s vagina. Jo did not have a full erection, so he was unable to penetrate M.J.'s vagina with his penis. When Jo first attacked M.J., the door to the storage area was open. Jo left M.J. briefly to close and lock the door. M.J. screamed at Jo to let her go and to stop. She screamed asking if anyone was there and for help.

Jo said it would be better if they went deeper into the storage area. He pulled M.J. to the innermost section of the room, which was the area furthest away from the door. M.J. resisted hard in an attempt not to be pulled inside. She sustained abrasions and scratching as she was being pulled on the floor. M.J. told Jo she was in pain. He pulled her into an upright position and hit her with his fist where she was injured, while at the same time asking " 'Is this where you're having pain?' " Jo spread M.J.'s legs apart again and tried unsuccessfully to insert his penis into her vagina. He inserted his finger in her vagina, and pushed, twisted, and turned it. He hit M.J. in the face and forced her to orally copulate him many times. The attack lasted for approximately one and a half hours. M.J. suffered a sprained neck. The attack also exacerbated her back pain from a previous injury. She estimated that Jo dragged her 10 meters.

## B. *Defense Evidence*

Jo admitted that he tried to have vaginal and oral sex with M.J. on July 3, 2021, and that he did not complete those acts

4

because he was physically unable to. He first testified that the interaction was consensual, but then admitted that M.J. resisted and he used force. Jo admitted that he dragged M.J.

## DISCUSSION

Jo argues that there is insufficient evidence to support the asportation element of aggravated kidnapping because he only moved M.J. a short distance within the storage room, and he moved her because the back of the storage room was more spacious—a reason incidental to the rape. We reject his arguments.

### A.    *Legal Principles*

"In deciding the sufficiency of the evidence, we ask whether ' "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence. [Citation.]

"Kidnapping to commit rape involves two prongs. First, the defendant must move the victim and this asportation must not be 'merely incidental to the [rape].' [Citations.] Second, the movement must increase 'the risk of harm to the victim over and above that necessarily present in the [rape].' [Citation.] The two are not mutually exclusive, they are interrelated. [Citation.]

"For the first prong, the jury considers the distance the defendant moved the victim and the 'scope and nature' of the movement. [Citations.] For the second, it considers whether the

movement gave the defendant 'the decreased likelihood of detection' and an 'enhanced opportunity to commit additional crimes.' " (*People v. Shadden* (2001) 93 Cal.App.4th 164, 168.)

" 'Whether a forced movement of a rape victim . . . was merely incidental to the rape, and whether the movement substantially increased the risk of harm to the victim, is difficult to capture in a simple verbal formulation that would apply to all cases. . . . [T]he jury must "consider[ ] the '*scope and nature*' of the movement," as well as "*the context of the environment in which the movement occurred*." [Citations.] This standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment. Moreover, whether the victim's forced movement was merely incidental to the rape is necessarily connected to whether it substantially increased the risk to the victim. "These two aspects are not mutually exclusive, but interrelated." [Citation.]' (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1151–1152, quoting *People v. Rayford* (1994) 9 Cal.4th 1, 12.) The Supreme Court has 'articulated various circumstances the jury should consider, such as whether the movement decreases the likelihood of detection, increases the danger inherent in a victim's foreseeable attempts to escape, or enhances the attacker's opportunity to commit additional crimes. [Citation.]' (*Dominguez*, at p. 1152.)" (*People v. Power* (2008) 159 Cal.App.4th 126, 138.)

## B.    *Analysis*

As to the first prong, the movement was not incidental to the attempted rape. " '[A] rape . . . does not necessarily require movement to complete the crime.' (*People v. Salazar* (1995) 33

Cal.App.4th 341, 348, fn. 8.) Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*Shadden*, *supra*, 93 Cal.App.4th at p. 169.) A distance of nine feet may be substantial. (*Ibid*.) Here, Jo did not begin his efforts to rape or otherwise sexually assault M.J. until after he moved her. (*Ibid*. [asportation element of kidnapping satisfied where defendant did not attempt to rape victim until after moving her a distance of nine feet].) Moreover, "[a]lthough 'the actual distance the victim was forced to move' is a 'relevant factor,' the Supreme Court has 'repeatedly stated no minimum distance is required to satisfy the asportation requirement.' ([*People v. Dominguez*, *supra*, 39 Cal.4th at p. 1162].) Actual distance 'must be considered in context, including the nature of the crime and its environment. . . . [E]ach case must be considered in the context of the totality of its circumstances.' (*Ibid*.)" (*People v. Robertson* (2012) 208 Cal.App.4th 965, 984.) " 'Where movement changes the victim's environment, it does not have to be great in distance to be substantial.' ([*People v.*] *Shadden*, *supra*, 93 Cal.App.4th at pp. 169, 167–169.)" (*People v. Robertson*, *supra*, at p. 986.) M.J. testified that Jo physically dragged her approximately 10 meters. While that may have been a relatively short distance, it took her further away from the only exit. It was only after Jo dragged M.J. away from the door that he closed and locked it. M.J.'s environment changed significantly at that point. She testified that she could not flee because she knew she could only get a few steps away before he would overtake her. The difference between running a few feet to escape the storage room with the door open and having to run 30 feet and unlock the door to escape was significant.

With respect to the second prong, Jo's movement of M.J. increased the risk of harm to M.J. over and above what was necessary to the attempted rape. Jo's act of dragging M.J. 10 meters across the storage room in and of itself caused physical harm to her back and neck. Jo then used those physical injuries to harm and humiliate M.J. further—mockingly asking whether those places on her body hurt and then purposefully hitting her where she had been injured. M.J.'s movement to the furthest depths of the storage room decreased the chance that Jo would be detected, allowing him to close and lock the storage room door with less risk that M.J. would attempt escape, or be heard screaming for help. As we have already observed, the increased distance made it much harder for M.J. to escape. Additionally, moving M.J. made it easier for Jo to commit additional crimes; indeed, Jo told her it would be better if they were deeper in the storage room. When he was unable to rape M.J., he beat and digitally penetrated her. The first area that he moved her to did not afford him as much space in which to harm her. M.J. testified that it was "much harder" for her to resist after Jo dragged her all the way to the back of the storage area. "He spread my two legs with his two legs apart, and I was not able to do anything. My back was hurting, my neck was hurting, and I was pleading that I was having pain, and I was asking to please stop."

Substantial evidence supports the jury's asportation findings.

## DISPOSITION

We affirm the trial court's judgment.

NOT TO BE PUBLISHED.


                                        MOOR, J.


I CONCUR:


KIM (D.), J.

The People v. Ung Rae Jo
B332220


BAKER, Acting P. J., Dissenting



Affirmance of defendant and appellant Ung Rae Jo's (defendant's) aggravated kidnapping conviction stretches the law too far.  The problem is not the distance of the asportation itself—even shorter distances have been held sufficient.  (See, e.g., *People v. Shadden* (2001) 93 Cal.App.4th 164, 167 [sufficient asportation when the defendant dragged the victim nine feet from the front counter of a video store into a small back room].)   The problem is that the forced movement relied on as nonincidental and to show an increased risk of harm (1) occurred entirely within a storage room where the victim was already present and (2) did not appreciably increase, given the location and features of that room, the risk of harm to the victim.  That distinguishes this case from other cases where aggravated kidnapping convictions have been properly affirmed.  (See, e.g., *People v. Dominguez* (2006) 39 Cal.4th 1141, 1151 [movement of victim down a road's embankment and out of sight of passersby sufficient for aggravated kidnapping]; *Shadden*, *supra*, at 167; see also *Dominguez*, *supra*, at 1152.)

The majority concludes otherwise by reasoning the victim was moved further away from the door of the storage

room.  That principle, i.e., movement within a room some distance away from a door (or other point of egress) during a sexual assault will warrant an aggravated kidnapping conviction, too greatly expands the circumstances in which such convictions may be had.  I would therefore reverse the conviction on count one but remand to give the trial court the opportunity to reconsider its earlier sentencing determinations.  (*People v. Buycks* (2018) 5 Cal.5th 857, 893; *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 ["[U]pon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term"].)


BAKER, Acting P. J.