Filed 5/26/26  P. v. Robertson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISAIAH LEE ROBERTSON,<br><br>Defendant and Appellant. | F089020<br><br>(Super. Ct. No. BF195897A)<br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  John W. Lua, Judge.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Hannah Janigian Chavez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Meehan, J. and DeSantos, J.

# INTRODUCTION

Defendant Isaiah Lee Robertson was arrested and charged in connection with an assault on an employee of a massage parlor. During trial, the court dismissed one count of false imprisonment with violence and the jury acquitted defendant of the second count. (Pen. Code, §§ 1118.1, 236.)[1] The jury convicted defendant of the remaining charges: kidnapping with the intent to commit rape and/or oral copulation (aggravated kidnapping); assault with the intent to commit rape, sodomy, and/or oral copulation; attempt to commit forcible oral copulation; and misdemeanor indecent exposure. (§§ 209, subd. (b)(1) [count 1], 220, subd. (a)(1) [count 2], 664/287, subd. (c)(2)(A) [count 3], 314, subd. (1) [count 6].) In a bifurcated proceeding, the trial court found the following aggravating sentencing factors true: "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness," and "[t]he victim was particularly vulnerable." (Cal. Rules of Court, rule 4.421(a)(1), (3).)

The trial court sentenced defendant to life in prison with the possibility of parole for aggravated kidnapping, and to a consecutive middle term of three years for attempted oral copulation. The court imposed the middle term of four years for the assault, stayed under section 654. The court subsequently imposed a concurrent term of 180 days in jail for indecent exposure.

Defendant timely appealed. He seeks reversal of his conviction for aggravated kidnapping on the ground that the asportation element is not supported by substantial evidence. He also claims the trial court erred in failing to stay his sentence for attempted oral copulation under section 654.

---

[1] All further statutory references are to the Penal Code.

The People dispute entitlement to relief from the aggravated kidnapping conviction, but they concede section 654 applies to the sentence for attempted oral copulation.

As discussed below, we find that evidence the victim was moved from the public reception area of the massage parlor to a private massage room is sufficient to support the jury's finding on the element of asportation and, therefore, we reject defendant's substantial evidence challenge to his conviction for aggravated kidnapping. We accept the People's concession of sentencing error and modify the judgment to reflect the sentence on count 3, attempted oral copulation, is stayed under section 654. Except as modified, we affirm the judgment.

## FACTUAL SUMMARY

In August 2023, at around 11:00 a.m., J. Z., a massage therapist, was at work. She was chatting with a friend when a man came in and booked a 30-minute massage. After the man paid, J.Z. took him to a massage room and her friend left, leaving J.Z. and the man alone in the massage parlor.

When J.Z. returned to the massage room after her friend departed, she found the man completely naked and lying facedown on the massage table. She covered him up with a towel and began massaging him. After a minute or so, she added oil at his request and continued with the massage. Shortly thereafter, the man turned over, which surprised her because it was not their business practice to have customers turn over during a 30 minute massage. The man did not speak, but his penis was exposed and erect. He refused to cover up, so J.Z. told him she was going to refund his money. He said, "okay." J.Z. returned the man's money to him, left the massage room, sat on the couch in the reception area of the massage parlor, and waited for the man to leave.

When the door to the massage room opened and the man came out, he was still completely naked. As the man walked to where J.Z. was seated on the couch, she feared he was going to assault her. J.Z. was petite and the man was taller, heavier and stronger.

3.

He grabbed her forcefully, tried to pull her pants down, and dragged her to the floor. She repeatedly said no and offered to give him money. The man pressed his body into hers and dragged her on the floor to the massage room, which was approximately six feet from the couch in the reception area. The man tried to pull her pants down again, and J.Z. feared being dragged into the massage room because she thought he might rape her. She struggled, screamed, and offered him money. The man tried to close the door twice, but he did not succeed in getting J.Z. all the way inside the room.

J.Z. managed to escape and run to the front door. The man followed and as he was distracted, she ran outside into the street, where she tried to flag down passing motorists. One motorist stopped, parked his truck, and stayed with J.Z. until police arrived. J.Z. testified she saw the man who assaulted her running away down the street, and the motorist testified that prior to speaking with J.Z., he saw a Black man walking away, although he was not aware at the time that the man may have been involved in the incident.

Various businesses, including the massage parlor, had video surveillance cameras and defendant's housemate recognized him from a still photo featured the next day during a local news broadcast.[2] The housemate called police and defendant was apprehended shortly thereafter at home, still wearing the same clothes as the day of the crimes.

---

**2**     Inside the massage parlor, law enforcement personnel dusted several places for fingerprints, swabbed for DNA, and seized several bedding items for DNA processing, but there were no latent fingerprints and comparisons of the DNA samples obtained with defendant's reference sample were inconclusive.

## DISCUSSION

### I. Substantial Evidence Challenge to Aggravated Kidnapping Conviction

#### A. Standard of Review

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense" (*Carella v. California* (1989) 491 U.S. 263, 265, citing *In re Winship* (1970) 397 U.S. 358, 364), and the verdict must be supported by substantial evidence (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 (*Zamudio*)). On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055 (*Nguyen*).) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Zamudio, supra*, at p. 357.)

"In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Zamudio, supra*, 43 Cal.4th at p. 357.) "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt ....'" (*Nguyen, supra*, 61 Cal.4th at pp. 1055–1056.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict" (*Zamudio, supra*, at p. 357), but "speculation, supposition and suspicion are patently insufficient to support an inference of fact" (*People v. Franklin* (2016) 248 Cal.App.4th 938, 951; accord, *People v. Marshall* (1997) 15 Cal.4th 1, 35; *People v. Xiong* (2013) 215 Cal.App.4th 1259, 1268).

### B. Aggravated Kidnapping

Section 209 mandates a sentence of life in prison with the possibility of parole for kidnapping for the purpose of committing robbery or certain sex offenses, including rape and oral copulation. (*Id.*, subd. (b)(1).) The statute requires "movement of the victim … beyond that merely incidental to the commission of, and [which] increases the risk of harm to the victim over and above that necessarily present in, the intended underlying offense." (*Id.*, subd. (b)(2).)

"The essence of aggravated kidnapping is the increase in the risk of harm to the victim caused by the forced movement." (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1152 (*Dominguez*), citing *People v. Rayford* (1994) 9 Cal.4th 1, 22.) Determining whether forced movement of a victim is merely incidental to the underlying crime and increases the risk of harm to the victim "is difficult to capture in a simple verbal formulation that would apply to all cases." (*Dominguez, supra*, at p. 1151, citing *Rayford, supra*, at p. 12.) "[T]he jury must 'consider[] the "*scope and nature*" of the movement,' as well as '*the context of the environment in which the movement occurred*.' (*Rayford, supra*, 9 Cal.4th at p. 12, italics added; see *People v. Aguilar* (2004) 120 Cal.App.4th 1044, 1051 [emphasizing the context of the movement].) This standard suggests a multifaceted, qualitative evaluation rather than a simple quantitative assessment. Moreover, whether the victim's forced movement was merely incidental to the [underlying sex offense] is necessarily connected to whether it … increased the risk to the victim. 'These two aspects are not mutually exclusive, but interrelated.'" (*Dominguez, supra*, at pp. 1151–1152, quoting *Rayford, supra*, at p. 12.) The inquiry is fact-specific and based on the totality of the circumstances. (*Dominguez, supra*, at p. 1152.)

### C. Analysis

Relying on *Hall* and *Waqa*, defendant argues the jury's finding on the asportation element of aggravated kidnapping is not supported by substantial evidence, entitling him

to reversal of his conviction on count 1. (*People v. Hall* (2024) 104 Cal.App.5th 1077 (*Hall*); *People v. Waqa* (2023) 92 Cal.App.5th 565 (*Waqa*).) However, "[t]he substantial evidence standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'" (*People v. Mumin* (2023) 15 Cal.5th 176, 202) and, as stated, "[a] reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict" (*Zamudio, supra*, 43 Cal.4th at p. 357). We conclude that in this case, there is sufficient evidence to support the jury's finding on the asportation element.

As to the first prong, the jury viewed video surveillance footage of the crime, which began in the public waiting area of the massage parlor. Defendant emerged from the private massage room unclothed and walked to where J.Z. was sitting on the couch in the waiting area. He grabbed her forcefully, threw her on the ground, and then dragged her to the massage room, which was a private room with only one door and no windows. Defendant was unable to get J.Z. inside the room and close the door on her, but he dragged her across the threshold and made several attempts to close the door. J.Z. continued to fight against him and she was able to escape.

Although the doorway to the private massage room was only six feet away from the couch in the public waiting area, approximately, "'under current law, "no minimum distance is required to satisfy the asportation requirement," .…'" (*People v. Ellis* (2025) 108 Cal.App.5th 590, 598 (*Ellis*), quoting *Waqa, supra*, 92 Cal.App.5th at p. 578.) Given that defendant dragged J.Z. from the waiting area to a private massage room, we have no difficulty concluding that as to the first prong, this movement was not merely incidental to the underlying attempted sex crime. (*Ellis, supra*, at pp. 597–598; *Waqa, supra*, at pp. 583–584.)

As the second prong, "[g]enerally, '[t]he environment the defendant creates within that distance is the critical factor.'" (*Ellis, supra*, 108 Cal.App.5th at p. 598, quoting

7.

*People v. Hughey* (2024) 105 Cal.App.5th 216, 228 (*Hughey*), review granted Dec. 11, 2024, S287455.)  J.Z. and defendant were alone in the massage parlor, and she testified that when she gave defendant his money back and left the private massage room, he was naked and his penis was erect.  She told him to put his clothes back on when she left, but when he emerged from the massage room, he was still naked.  He went to where she was seated on the couch in the waiting area, threw her on the floor, and dragged her to the private massage room.  A reasonable trier of fact could conclude that dragging J.Z. from the public waiting room to the private massage room increased the risk of harm to her beyond that inherent in the underlying sex crime, despite the relatively short distance between the two points.  (*People v. Robertson* (2012) 208 Cal.App.4th 965, 984 (*Robertson*) [movement of victim from back of garage by a door to front of garage behind a tub of water sufficient to support aggravated kidnapping conviction]; *People v. Shadden* (2001) 93 Cal.App.4th 164, 168–169 (*Shadden*) [evidence sufficient to support kidnapping to commit rape where the defendant moved the victim nine feet from public counter area to back room].)  J.Z. was smaller than defendant and he threw her to the floor of the waiting room, pressed his body into hers, and attempted to pull down her pants.  He could have remained in the waiting area to commit a sex offense, but, instead, he dragged her away from that area to the private massage room, where rape or oral copulation would be shielded from the view of anyone walking into the business through the front door and J.Z.'s ability to escape the closed room would have been limited to one door easily blocked given the size difference between the two.

We are unpersuaded *Hall* compels a different conclusion.  In that case, the two defendants were convicted of home invasion robbery in concert and simple kidnapping.  (*Hall, supra*, 104 Cal.App.5th at p. 1088 (maj. opn.).)  The defendants and a third man spent approximately one hour inside the victim's house (*id.* at p. 1108 (conc. & dis. opn. of Moore, Acting P.J.), during which time they struck the victim upon entry, demanded money and marijuana, forced him upstairs to open a safe, moved him back downstairs,

took him into the garage, and moved him back to the kitchen, where they tied him to a chair and beat him further (*id.* at p. 1083 (maj. opn.)). A divided appellate court reversed the conviction for simple kidnapping, reasoning that the movement of the victim throughout the house was "merely incidental to the crime of robbery." (*Id.* at p. 1090 (maj. opn.).)

In a concurring and dissenting opinion, Justice Moore stated, "Based on the testimony and the crime scene photos, the jurors could have reasonably concluded that the distance the victim was moved at gunpoint was (a) more than slight or trivial, (b) increased the danger of his foreseeable escape attempt, (c) increased the risk of his physical or psychological harm, (d) gave the attackers a greater opportunity to commit additional crimes, or (e) decreased the likelihood of their detection." (*Hall, supra*, 104 Cal.App.5th at p. 1106 (conc. & dis. opn. of Moore, Acting P.J.); accord, *Hughey, supra*, 105 Cal.App.5th at pp. 227–228, review granted.)[3] "[T]here is substantial evidence that supports the jury's factual determination that [the victim] was moved a substantial distance. We simply have no legal authorization to substitute our judgment for that of the jury." (*Hall, supra*, at p. 1108 (conc. & dis. opn. of Moore, Acting P.J.).)

We find the dissenting viewpoint persuasive, but in any event, the majority observed, "To state the obvious, this appeal concerns a robbery, not a rape" and a "robbery and rape are crimes with very different contexts .…" (*Hall, supra*, 104 Cal.App.5th at p. 1091 (maj. opn.); accord, *Robertson, supra*, 208 Cal.App.4th at p. 986

---

[3] The California Supreme Court has granted review in *Hughey* to consider whether there was sufficient evidence supporting the asportation element of the defendants' simple kidnapping convictions. In that case, the defendants robbed a cell phone store and moved the employees from the front of the store through a locked door to the back and then through a second locked door to the safe room area, for a total distance of approximately 40 feet. (*Hughey, supra*, 105 Cal.App.5th at p. 221, review granted.) The defendants were acquitted in a court trial of aggravated kidnapping, but convicted of simple kidnapping. (*Ibid.*, review granted.) On appeal, they argued, unsuccessfully, that the movement of the employees from the front of the store to the back was merely incidental to the robbery. (*Id.* at pp. 226–228, review granted.)

["[k]idnapping for the purpose of robbery is not analogous to kidnapping for the purpose of rape"].)  "'[A] rape … does not necessarily require movement to complete the crime.'" (*Shadden, supra*, 93 Cal.App.4th at p. 169.)  "Where a defendant drags a victim to another place, and then attempts a rape, the jury may reasonably infer that the movement was neither part of nor necessary to the rape." (*Ibid.*)

We also find *Waqa* distinguishable.  There, the defendant forcibly raped the victim in the large stall of a park's public restroom after moving her from a small stall.  (*Waqa, supra,* 92 Cal.App.5th at p. 572.)  The jury convicted the defendant of rape and found the aggravated kidnapping special circumstance allegation under the One Strike law true. (*Waqa, supra*, at pp. 572–573; § 667.61, subds. (a), (d)(2).)  The appellate court found insufficient evidence to support the aggravated kidnapping special circumstance, but sufficient evidence to support a simple kidnapping special circumstance finding.  (*Waqa, supra*, at p. 573; § 667.61, subds. (b), (e)(1).)  The court explained, "The asportation element of the[] three forms of kidnapping tied to the commission of another crime (simple kidnapping committed in conjunction with another offense; kidnapping for rape or robbery; and the aggravated kidnapping circumstance) requires that the movement be "'more than that which is merely incidental to the commission or attempted commission of [the associated crime].'"'" (*Waqa, supra*, at p. 578, quoting *Dominguez, supra*, 39 Cal.4th at p. 1150.)  In contrast, "[k]idnapping for robbery or rape and the aggravated kidnapping circumstance also require that the movement increased the risk of harm to the victim beyond that inherent in the underlying offense, with the aggravated kidnapping circumstance further requiring that the increase was substantial." (*Waqa, supra*, at p. 578, fn. omitted.)  The appellate court concluded that there was sufficient evidence of movement that was more than incidental.  (*Id.* at pp. 583–584.)  However, "[a]lthough the movement of [the victim] from the small stall to the large stall may have made it easier for [the defendant] to complete the rape, there was insufficient evidence that the change substantially increased [the victim's] risk of harm." (*Id.* at p. 580.)  Therefore, the court

10.

reduced the aggravated kidnapping special circumstance finding to a kidnapping special circumstance finding.  (*Id.* at p. 573.)

The aggravated kidnapping special circumstance under the One Strike law, at issue in *Waqa*, requires that movement of the victim *substantially* increase the risk of harm to the victim.  (§ 667.61, subd. (d)(2); *Waqa, supra*, 92 Cal.App.5th at p. 578.)  In contrast, aggravated kidnapping under section 209, subdivision (b)(2), at issue here, requires only an "increased … risk of harm over and above that necessarily present in the [underlying] crime … itself."  (*People v. Vines* (2011) 51 Cal.4th 830, 869; see *ibid.*, fn. 20 [in 1997, the Legislature eliminated the requirement that the increased risk of harm be substantial], overruled on another ground by *People v. Hardy* (2018) 5 Cal.5th 56, 103–104; accord, *People v. Taylor* (2020) 43 Cal.App.5th 1102, 1106.)  Because the jury's finding in *Waqa* required evidence of a substantial increase in the risk of harm to the victim, it simply does not assist defendant in this case.  (*People v. Brooks* (2017) 3 Cal.5th 1, 110 ["[i]t is axiomatic that a case is not authority for an issue that was not considered"].)

Finally, we find the recent decision in *Ellis* readily distinguishable.  In that case, the jury convicted the defendant of simple kidnapping, but the appellate court found insufficient evidence of asportation and reversed the conviction.  (*Ellis, supra*, 108 Cal.App.5th at p. 600.)  There, the defendant grabbed the victim on a public sidewalk and moved her approximately 10 feet into a public street.  (*Id.* at pp. 594, 595.)  The court rejected the claim that the distance the victim was moved was insufficient to support the first prong of asportation, but agreed that the movement was not substantial under the totality of the circumstances under the second prong.  (*Id.* at pp. 598–599.)  The court explained, "Here, Ellis's movement of [the victim] 10 feet from the sidewalk to [the] middle of the street did not appreciably change her surrounding environment.  In both places, [the victim] was in public view, she had the same ability to call for help or to escape, and Ellis had the same opportunity to commit other crimes."  (*Id.* at p. 600.)  In this case, in contrast, the movement from a public waiting area to a private room did

appreciably change the victim's environment, and a reasonable trier of fact could determine that this movement increased the risk of harm to the victim.

"'"'[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.'"'" (*People v. Oyler* (2025) 17 Cal.5th 756, 820.) Accordingly, we conclude there is sufficient evidence to support the jury's finding that defendant committed aggravated kidnapping and we affirm the conviction.

## II. Sentencing Error

### A. Section 654

Section 654, subdivision (a), provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision.…" "[T]he statute is intended to ensure that [the] defendant is punished 'commensurate with his culpability' [citation] .…" (*People v. Harrison* (1989) 48 Cal.3d 321, 335 (*Harrison*). It "expressly prohibits separate punishment for two crimes based on the same act, but has been interpreted to also preclude multiple punishment for two or more crimes occurring within the same course of conduct pursuant to a single intent." (*People v. Vargas* (2014) 59 Cal.4th 635, 642; accord, *Harrison, supra*, at p. 335).

"'"'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'"'" (*People v. Capistrano* (2014) 59 Cal.4th 830, 885 (*Capistrano*), quoting *People v. Rodriguez* (2009) 47 Cal.4th 501, 507, overruled in part on another ground in *People v. Hardy, supra*, 5 Cal.5th at pp. 103–104.) However, "'[t]he temporal proximity of the two offenses is insufficient by itself to establish that they were incident to a single objective.'" (*People v. Jackson* (2016) 1 Cal.5th 269, 354, quoting *People v. Capistrano, supra*, at p. 887;

12.

accord, *Harrison, supra*, 48 Cal.3d at p. 335.) "'If [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.'" (*People v. Porter* (1987) 194 Cal.App.3d 34, 38, quoting *People v. Beamon* (1973) 8 Cal.3d 625, 639; accord, *Harrison, supra*, p. 335; *People v. Tom* (2018) 22 Cal.App.5th 250, 260.) "Furthermore, 'multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm.'" (*People v. Lopez* (2011) 198 Cal.App.4th 698, 717, quoting *People v. Felix* (2001) 92 Cal.App.4th 905, 915.)

### B.     Analysis

Prior to the sentencing hearing, defendant filed a statement in mitigation arguing that section 654 applies to all three felony counts because he harbored a single intent or objective. Based on his history of mental illness and lack of a serious criminal history, defendant requested the trial court exercise its discretion to stay the sentences for aggravated kidnapping and one of the other two counts under section 654. However, the court sentenced defendant to life in prison with the possibility of parole for kidnapping to commit rape or oral copulation (count 1) and to a consecutive middle term of three years for attempted oral copulation (count 3). The court stayed defendant's four-year sentence on count 2 for assault with the intent to commit rape, sodomy, and/or oral copulation under section 654, but as to count 3, the court concluded that attempted oral copulation "was a separate and distinct crime with a separate intent …."[4] Defendant claims this was error because there is no evidence he harbored multiple intents or objectives. (*Capistrano, supra*, 59 Cal.4th at p. 886.) The People concede the court erred.

---

[4]     The prosecutor's theory underlying the charge was defendant's act of moving J.Z.'s head toward his erect penis, which the jury viewed on videotape.

We accept the People's concession. The crimes in this case occurred during the short period of time, measurable in mere minutes, that defendant was inside the massage parlor, and there is no evidence that he had any intent or objective other than to commit an underlying sex crime. Therefore, his sentence on count 3 for attempted forcible oral copulation should have been stayed under section 654.

The remedy defendant seeks is remand for resentencing, with directions to the trial court to stay the sentence on count 3 under section 654. However, we may modify the judgment on review to reflect the sentence is stayed. (§ 1260.) In the absence of any other errors requiring remand, we exercise our discretion to do so. (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1473; see *People v. Flores* (2022) 77 Cal.App.5th 420, 453 ["[w]e need not remand a matter when it would be an idle act wasteful of judicial resources"].)

## DISPOSITION

The judgment is modified to reflect defendant's sentence on count 3, attempted forcible oral copulation, is stayed under section 654. The trial court is directed to prepare an amended abstract of judgment reflecting this modification and forward it to the proper authorities. Except as modified, the judgment is affirmed.